DONALD GRAY JOYNER v. JOE W. GARRETT, COMMISSIONER, N. C. DEPARTMENT OF MOTOR VEHICLES

No. 75

(Filed 30 July 1971)

**1. Automobiles § 1— suspension of driver's license — jurisdiction — review**

The power to issue, suspend, or revoke a driver's license is vested exclusively in the Department of Motor Vehicles, subject to review by the superior court and, upon appeal, by the appellate division.

**2. Automobiles § 2— suspension of license — refusal to take breathalyzer test — finding of wilfulness**

With respect to the statute authorizing 60-day suspension of driver's license upon the driver's wilful refusal to take a breathalyzer test, a finding by the Department of Motor Vehicles that the driver "did refuse" to take the breathalyzer test is equivalent to a finding that the driver "wilfully refused" to take the test. G.S. 20-16.2(c) and (d).

**3. Automobiles § 2— suspension of license — administrative hearing — inadmissibility of officer's affidavit**

Arresting officer's affidavit that the petitioner wilfully refused to take a breathalyzer test is inadmissible in evidence upon objection by petitioner at an administrative hearing on the suspension of his license.

**4. Automobiles § 2— suspension of license — administrative hearing — waiver of objection**

Where petitioner in an administrative hearing on the suspension of his driver's license failed either to object to the admissibility of the arresting officer's sworn report or to demand the right to cross-examine the officer, he waived the right to assert an appeal that the report was inadmissible and that he was denied the right of cross-examination.

**5. Automobiles § 2— suspension of license — refusal to take breathalyzer test — administrative hearing — burden of proof**

At an administrative hearing on the suspension of petitioner's driver's license for refusing to take a breathalyzer test at the time of his arrest for drunken driving, the Department of Motor Vehicles had the burden to show that the petitioner wilfully refused to take the test.

**6. Automobiles § 2— suspension of license — administrative hearing — waiver of cross-examination**

Petitioner waived his right to cross-examine the arresting officer at an administrative hearing on the suspension of his driver's license when he failed to assert such right.

**7. Automobiles § 2— suspension of license — administrative hearing — hearing de novo — harmless error**

Any error occurring in the administrative hearing on the suspension of petitioner's driver's license is rendered harmless by the superior court hearing *de novo*.

Joyner v. Garrett, Comr. of Motor Vehicles

8. **Automobiles § 2— suspension of license — superior court hearing — sufficiency of findings**

Superior court's finding and conclusion that the petitioner wilfully refused the arresting officer's request that he submit to a breathalyzer test was supported by the officer's own testimony.

9. **Automobiles § 2— suspension of license — superior court hearing — burden of proof**

The Department of Motor Vehicles has the burden of proof in a hearing *de novo* in the superior court on the suspension of petitioner's driver's license for wilfully refusing to take a breathalyzer test; accordingly, a ruling which placed the burden of proof on petitioner is reversible error.

10. **Trial § 34— burden of proof — substantial right**

The rule as to the burden of proof constitutes a substantial right.

11. **Trial § 34— burden of proof — nonjury trials**

The law relating to the burden of proof is equally applicable to jury and nonjury trials.

12. **Automobiles § 1— suspension of license — effect of sentence in criminal case**

The twelve-month suspension of petitioner's driver's license which was imposed upon his plea of guilty to the charge of drunken driving did not preclude the Department of Motor Vehicles from suspending petitioner's driver's license for refusing to take a breathalyzer test at the time of his arrest for drunken driving.

APPEAL by petitioner from *Clark, J.,* 27 October 1970 Session of WAKE, transferred from the Court of Appeals for initial appellate review by the Supreme Court under its general order 31 July 1970, entered pursuant to G.S. 7A-31(b) (4).

This proceeding was instituted under G.S. 20-25 to review an order of the respondent, Department of Motor Vehicles (Department), suspending petitioner's driver's license because of his refusal to take the Breathalyzer test. The allegations in petitioner's petition for review, admissions in the Department's answer, and record evidence establish the following events:

On 27 September 1969 petitioner, a resident of Wake County, was arrested in Carteret County upon a charge of operating a motor vehicle on a public highway while under the influence of an intoxicant, a violation of G.S. 20-138. He pled guilty to the charge on 9 October 1969, and his driver's license was revoked for one year with "limited driving privileges in accordance with G.S. 20-179."

On 1 October 1969, acting under G.S. 20-16.2(c) and (d), the Department notified petitioner that his driving privilege was revoked immediately for sixty days unless he requested a hearing within three days. Petitioner requested the hearing, which was held on 6 November 1969 in accordance with G.S. 20-16.2(d). The only persons present at the hearing were petitioner, his attorney, and the hearing officer.

The hearing officer's report, which petitioner attached to his petition as Exhibit A, shows that at the hearing petitioner made the following statements: "Was arrested—Was intoxicated. Plead guilty to charge on October 9, 1969 and was issued limited driving privilege by the court—Does not remember being offered breath test nor being advised of loss of license for refusing test. In fact, advised officer that no purpose would be served by taking test, inasmuch, as he was pleading guilty to charge."

The hearing officer, answering the issues to which G.S. 20-16.2 limits the scope of the administrative hearing, found (1) petitioner was driving upon the public highways of this State while under the influence of intoxicating liquor; (2) he was placed under arrest; (3) he refused to submit to a chemical test of his breath upon the request of the arresting officer; and (4) he was informed his privilege to drive would be revoked if he refused to submit to the test.

Following the hearing, on 20 November 1969, the Department notified petitioner that the revocation of his driving privilege was sustained and, beginning 28 November 1969, his driver's license was revoked for sixty days. This notice of revocation was attached to the petition as Exhibit B.

In the record on appeal, at the end of Exhibit A attached to the petition, appears the following: "Petitioner's Exceptions Nos. 1 and 2." At the end of Exhibit B and just before a notation with reference to the date of the verification of the petition, appears "Petitioner's Exception No. 3."

On 1 December 1969, pursuant to G.S. 20-25, petitioner petitioned the Superior Court of Wake County to review the ruling of the Department, and he secured from the court an order staying the revocation of his license pending the review.

Before hearing petitioner's appeal on 26 October 1970 Judge Clark ruled that the matter was before him *de novo;*

that he was not bound by the Department's findings of fact and conclusions of law; and that the burden of proof was on petitioner to show that his license had been unlawfully suspended. (These rulings are the basis for petitioner's exceptions 4 and 5.) In the prehearing colloquy between counsel and the court, petitioner's attorney asserted that in the administrative hearing the burden of proof was upon the Department. Judge Clark replied, "Well, I think the burden of proof is on the petitioner. Are you ready to proceed?" Counsel for petitioner announced his readiness and called petitioner, who testified as follows:

In September 1969, while operating his motor vehicle on the highway between Atlantic Beach and Salter Path, petitioner was arrested by Highway Patrolman Spainhour for "driving under the influence." Petitioner "was drunk enough" so that he didn't "know what was going on." He learned later that he had been arrested about 1:00 a.m. on September 27th. He remembers seeing Patrolman Spainhour and nobody else. However, he does not remember anything the officer told him. He does not know whether he was advised of his constitutional rights, asked to take the Breathalyzer test, or told the consequences of a refusal to take the test; nor does he know whether he took the test. He said: "The best I can remember I told him I was gonna plead guilty to drunken driving. . . . I think I told him that I was gonna plead guilty. I know I talked to him. I knew I was drunk and I didn't see any need of taking the test. I don't know if he asked me to even take the test. I couldn't refuse anything I didn't know." At his trial petitioner pled guilty to the drunken driving charge and his license, which has since been restored, was revoked for a year with "certain privileges to drive to and from work."

The Department's evidence consisted of the testimony of Patrolman T. H. Spainhour and tended to show:

During the early morning hours of 27 September 1969 he arrested petitioner upon a charge of operating a motor vehicle upon a public highway while under the influence of an intoxicant. At the time petitioner was drunk. Spainhour advised him of his constitutional rights, and petitioner said he understood them. The patrolman then explained to petitioner the nature of the Breathalyzer test; that it was free; that he was entitled to call an attorney and to select a witness to view the testing procedures. Spainhour also informed petitioner that if he de-

clined to take the test his operator's license would be suspended for sixty days. He then took petitioner to the patrol station where a sergeant from the Morehead City Police Department prepared to administer the Breathalyzer test. When the machine was ready petitioner refused to submit to the test. He was again advised that his license would be suspended if he did not take the test. Notwithstanding, petitioner persisted in his refusal, saying that "he was a taxpayer and he didn't have to take it." He also refused to "walk the line," to take the "turning tests," and to answer the questionnaire, which was one of the routine tests given a person charged with drunken driving. Petitioner said "he was not gonna answer any questions." Spainhour, who "doesn't know how drunks think," didn't know then and still does not know whether petitioner understood what he told him. However, petitioner obeyed his instructions to get in or out of the car, to go in the door at the patrol station, and to sit down inside. When asked "to step up and take the test," however, he refused. He could stand up, but he wobbled.

Spainhour, pursuant to G.S. 20-16.2(c), sent to the Department of Motor Vehicles the report that petitioner had refused to submit to the test.

At the conclusion of the hearing, from the evidence presented, *inter alia,* Judge Clark found: On 27 September 1969 petitioner was arrested for a violation of G.S. 20-138. He was requested by the arresting officer to submit to a chemical test of his breath to determine the alcoholic content of his blood and was fully advised of his rights in connection with it. At that time petitioner "was not unconscious or otherwise in a condition which would have rendered him incapable of refusing to take the chemical test." Petitioner "did wilfully refuse to submit to said test."

Upon the foregoing findings Judge Clark entered a judgment affirming the Department's order of 20 November 1969 revoking petitioner's driving privilege for sixty days. In the record, immediately following the judgment, appears the following: "Petitioner's exceptions Nos. 6, 7, 8, 9 and 10."

*Vaughan S. Winborne for plaintiff appellant.*

*Attorney General Morgan, Assistant Attorneys General Melvin and Costen for respondent appellee.*

SHARP, Justice.

Petitioner "prays" this Court to rescind the action of the Department and to declare his license "in good standing as it pertains to this arrest." He contends that he is entitled to this relief because (1) he was denied the right to cross-examine Patrolman Spainhour at the administrative hearing; (2) the hearing officer did not find that he *wilfully* failed to submit to the chemical test, and therefore his findings did not sustain the Department's order of revocation; (3) Judge Clark erred in ruling that the burden of proof is on petitioner; and (4) the evidence was insufficient to sustain a finding that petitioner wilfully refused to take the test.

Summarized, except when quoted, G.S. 20.16.2 provides in pertinent part: Any person arrested upon the charge of operating a motor vehicle on a public highway of this State while under the influence of intoxicating liquor shall submit to a chemical test of his breath or blood upon the request of a law-enforcement officer having reasonable grounds to believe him guilty of the charge. If the accused "wilfully refuses" the request, no test shall be given, "but the Department, upon the receipt of a sworn report of the law-enforcement officer or other witness that the arrested person had been driving a motor vehicle upon the public highways of this State while under the influence of intoxicating liquor and that the person had wilfully refused to submit to the test upon the request of the law-enforcement officer, shall revoke his driving privilege for a period of sixty days." Upon receipt of the sworn report the Department shall notify the arrested person that "his license to drive is revoked immediately" unless he files a written request for a hearing within three days of receipt of the notice. Such a request permits the person to retain his license until after the hearing. The scope of the hearing "shall cover the issues of whether the person had been driving a motor vehicle upon the public highways of the State . . . while under the influence of intoxicating liquor, whether the person was placed under arrest, and whether he refused to submit to the test upon the request of the officer. Whether the person was informed that his privilege to drive would be revoked if he refused to submit to the test shall be an issue." The hearing shall be conducted under the conditions specified in G.S. 20-16 (d).

G.S. 20-16(d), *inter alia*, empowers the duly authorized agents of the Department to administer oaths and to issue subpoenas for witnesses and the production of relevant books and papers. "Upon such hearing the Department shall either rescind its order of suspension, *or good cause appearing therefor,* may extend the suspension of such license." (Emphasis added.) If the revocation is sustained G.S. 20-25 gives the person whose driving privilege has been revoked "a right to file a petition within thirty (30) days thereafter for a hearing in the matter in the superior court. . . . " Upon the filing of such a petition for review the court has jurisdiction "to take testimony and examine into the facts of the case, and to determine whether the petitioner . . . is subject to suspension . . . of license. . . . "

[1] From the foregoing statutes it is clear that any person whose driver's license has been suspended by the Department of Motor Vehicles under the provisions of G.S. 20-16.2(d) has the right to a "full *de novo* review by a Superior Court judge." *Underwood v. Howland, Comr. of Motor Vehicles,* 274 N.C. 473, 476, 164 S.E. 2d 2, 5. *Accord, In re Donnelly,* 260 N.C. 375, 132 S.E. 2d 904; *In re Revocation of License of Wright,* 228 N.C. 301, 45 S.E. 2d 370; s. c. 228 N.C. 584, 46 S.E. 2d 696; Annot., 97 A.L.R. 2d 1367, 1371. This means the court must hear the matter "on its merits from beginning to end as if no trial or hearing had been held" by the Department and without any presumption in favor of its decision. *In re Hayes,* 261 N.C. 616, 622, 135 S.E. 2d 645, 649. No discretionary power is conferred upon the court in matters pertaining to the revocation of licenses. If, under the facts found by the judge, the statute requires the suspension or revocation of petitioner's license "the order of the department entered in conformity with the facts found must be affirmed." *In re Revocation of License of Wright,* 228 N.C. at 589, 46 S.E. 2d at 700. The power to issue, suspend, or revoke a driver's license is vested exclusively in the Department of Motor Vehicles, subject to review by the Superior Court and, upon appeal, by the appellate division. *Harrell v. Scheidt, Com'r of Motor Vehicles,* 243 N.C. 735, 92 S.E. 2d 182; *State v. Cooper,* 224 N.C. 100, 29 S.E. 2d 18.

In this case petitioner concedes that at the time of his arrest he was operating a motor vehicle upon a public highway while under the influence of an intoxicant and that twelve days later he pled guilty to the offense. He does not deny that

he was requested to take the Breathalyzer test, that he was told he could call an attorney and select a witness to view the test, or that he was apprised of the consequences of his refusal to take the test. His contention is that he does not remember anything the officer said to him; that he was so drunk he was incapable of *wilfully* refusing to take the test. Thus, the only issue before the Department and in the Superior Court on appeal was whether petitioner wilfully refused to submit to the test.

We note that section (c) of G.S. 20-16.2 directs that the chemical test shall not be given if the arrested person "wilfully refuses" to take it and requires the Department to revoke his license upon the law-enforcement officer's sworn report that the person had "wilfully refused" to submit to the test. However, section (d), which specifies the issues determining whether the initial suspension of petitioner's license should be sustained, states the third issue to be "whether he refused to submit to the test upon the request of the officer." In that issue the word *wilfully* is omitted. Obviously, however, when the legislature used the word *refused* in section (d) it referred back to the wilful refusal specified in section (c) and embraced the concept of a conscious choice purposely made. It is equally clear that the Department's hearing officer employed the word in that sense when he stated the issues *in the words of the statute* in his report of petitioner's hearing. In Black's Law Dictionary (4th Ed., 1951) *refusal* is defined as "the declination of a request or demand, or the omission to comply with some requirement of law, as the result of a positive intention to disobey." *See also State v. Arnold,* 264 N.C. 348, 141 S.E. 2d 473. This is the sense of the word *refuse* as used in G.S. 20-16.2 and as used by the Department in its proceedings under that statute. Accordingly, Judge Clark specifically found as a fact that petitioner "did wilfully refuse to submit to the test."

[2] Petitioner contends the Department's finding that he "did refuse" to take the test was insufficient to sustain its order suspending his license; that a finding of *wilful* refusal was required. This contention is without merit. However, it is suggested that in future proceedings under G.S. 20-16.2, in the interest of clarity and uniformity, the Department should employ the word *wilful* or *wilfully* in its findings and orders dealing with an arrested person's refusal to take the test.

[3]   Petitioner also complained in the Superior Court that at the administrative hearing he "was not afforded the right of cross-examination and the right to confront his accuser." On this appeal he says that the evidence against him at the first hearing was only "the printed form affidavit" of the arresting officer. "Rules governing the admissibility of evidence in civil proceedings generally have been applied in proceedings for the suspension or revocation of a driver's license." 60 C.J.S. *Motor Vehicles* § 164.29 (1969). G.S. 20-16.2 does not make the law-enforcement officer's sworn report *prima facie* evidence that the arrested person wilfully refused to submit to the Breathalyzer test. Therefore, if he objects to its introduction, the report cannot be used as evidence against him.

[4]   The record, however, fails to show that at the hearing he either objected to the introduction of the sworn report or demanded the right to cross-examine Patrolman Spainhour. Evidence admitted without objection is properly considered by the court and, on appeal, the question of its competency cannot be presented for the first time. 4 Strong, N. C. Index *Trial* § 15 (1961). Petitioner's blanket exceptions to the hearing officer's report and to the Department's order of suspension will not sustain his assignment of error that he was denied the right to cross-examine Officer Spainhour. "An assignment of error is not a substitute for an exception." *Equipment Company v. Johnson, Comr. of Revenue*, 261 N.C. 269, 273, 134 S.E. 2d 327, 330.

[5]   Upon receipt of Patrolman Spainhour's sworn report that petitioner had wilfully refused to take the Breathalyzer test, G.S. 20-16.2 required the Department to revoke his license. Petitioner's timely request for a hearing, however, temporarily suspended the revocation. After the hearing the Department could either rescind its order of suspension or "good cause appearing therefor" extend the suspension of his license. G.S. 20-16(d). Upon the hearing, therefore, the burden was upon the Department to show that petitioner had wilfully refused to take the test.

Proceedings involving the suspension or revocation of a license to operate a motor vehicle are civil and not criminal in nature, and the revocation of a license is no part of the punishment for the crime for which the licensee was arrested. *Honeycutt v. Scheidt*, 254 N.C. 607, 119 S.E. 2d 777; *Harrell v. Scheidt*,

*Com'r of Motor Vehicles, supra;* 1 N. C. Index 2d *Automobiles* § 1 (1967). A license to operate a motor vehicle is not a natural or unrestricted right, nor is it a contract or property right in the constitutional sense. It is a conditional privilege, and the General Assembly has full authority to prescribe the conditions upon which licenses may be issued and revoked. However, once issued, a license is of substantial value to the holder and may be revoked or suspended only in the manner and for the causes specified by statute. *Harrell v. Scheidt, Com'r of Motor Vehicles, supra; Fox v. Scheidt, Comr. of Motor Vehicles,* 241 N.C. 31, 84 S.E. 2d 259; *In re Revocation of License of Wright, supra.*

[6]  At the administrative hearing, under G.S. 20-16(d), the licensee has the right to be confronted by any witness whose testimony is used against him and to cross-examine the witness if he so desires. However, this is a right which the licensee waives if he does not assert it in apt time. *State v. Moore,* 275 N.C. 198, 166 S.E. 2d 652; *In re West,* 212 N.C. 189, 193 S.E. 134; 60 C.J.S. *Motor Vehicles* § 164.27 (1969) ; 7 Am. Jur. 2d *Automobiles and Highway Traffic* § 122 (1963). In this case, petitioner waived his right to cross-examine the arresting officer at the administrative hearing by failing to assert it. Furthermore, in the absence of a timely objection as to its introduction, Officer Spainhour's sworn report was sufficient evidence to sustain the Department's suspension of petitioner's license. The record shows no objection to its introduction.

[7]  When this proceeding came on for review in the Superior Court Judge Clark correctly ruled that the hearing before him was *de novo;* and that he was not bound by the Department's findings of fact and conclusions of law. In the Superior Court the Department did not offer the arresting officer's sworn report. Patrolman Spainhour testified for the Department and was cross-examined by petitioner. Therefore, if any errors were committed in the administrative proceedings, they were rendered harmless by the hearing *de novo* on appeal.

[8]  Petitioner's contention that the evidence before Judge Clark will not support his finding of fact that petitioner wilfully refused the arresting officer's request that he submit to a chemical test of his breath is without merit. Patrolman Spainhour's testimony supports the finding as does petitioner's statement that he knew he was drunk and didn't see any need of taking the test. Of course, petitioner also testified that he

didn't remember being asked to take the Breathalyzer test; that he didn't know what was going on; and that he didn't remember anything the officer told him. The credibility of conflicting evidence and the inferences to be drawn from it were for the judge, whose duty it was to determine whether petitioner had wilfully refused to take the test.

[9] Petitioner's assignment of error No. 4 presents the crucial question on this appeal: Did the judge commit prejudicial error when he ruled that the burden of proof in the *de novo* hearing in the Superior Court was on petitioner?

[10, 11] "The rule as to the burden of proof (the burden of the issue) constitutes a substantial right, for upon it many cases are made to turn, and its erroneous placing is regarded as reversible error." *Williams v. Insurance Company*, 212 N.C. 516, 518, 193 S.E. 728, 730; 4 Strong, N. C. Index *Trial* § 34 (1961). If in doubt as to any controversial issue, it is the duty of the trier of facts "to decide that issue against the party on whom the burden rests and who has failed to produce the requisite degree of conviction." Stansbury, North Carolina Evidence § 206 (2d ed. 1963) ; *In re Westover Canal*, 230 N.C. 91, 52 S.E. 2d 225; 4 Strong, N. C. Index *Trial* § 14 (1961). The law relating to the burden of proof is equally applicable to jury and nonjury trials. Stansbury, *supra* § 203, n. 16.

As heretofore pointed out in the administrative hearing the burden of proof was upon the Department to show "good cause" for extending the suspension of petitioner's license. Since the hearing on appeal in the Superior Court was *de novo,* if the Department had the burden of proof at the first hearing, obviously it also had the burden at the *de novo* hearing in the Superior Court. "[T]he general rule is that on the trial *de novo* on appeal to review an order of suspension or revocation the state, or its administrative agency or official, has the burden of proving the charge on which the suspension or revocation was based. . . . " 60 C.J.S. *Motor Vehicles* § 164.41 (1969).

As authority for its contention that the burden is upon petitioner, the Department relies upon a statement in *Beaver v. Scheidt, Comr. of Motor Vehicles,* 251 N.C. 671, 674, 111 S.E. 2d 881, 883. Beaver, whose license had been revoked for successive convictions of speeding, ignored the Department's order suspending his license. In consequence, he was thereafter

---

**Joyner v. Garrett, Comr. of Motor Vehicles**

---

twice convicted for driving after his license had been revoked, and successive orders revoking his license for additional periods of time were served upon him. Contending that the first suspension was void, Beaver petitioned for the restoration of his driving privileges. In affirming the orders of revocation, Justice Rodman, speaking for the Court, said: "If petitioner had been improperly deprived of his license by the Department due to a mistake of law or fact, his remedy was to apply for a hearing as provided by G.S. 20-16(c) or by application to the Superior Court as permitted by G.S. 20-25. At a hearing held pursuant to either of these statutory provisons *he would be permitted to show that the suspension was erroneous. In re Wright,* 228 N.C. 301, 45 S.E. 2d 370; s. c., 228 N.C. 584, 46 S.E. 2d 696. Petitioner could not contemptuously ignore the quasi judicial determination made by the Department." (Emphasis added.)

Neither the foregoing statement nor the decision in *Beaver* support the Department's contention that petitioner had the burden of proof. Beaver's appeal did not raise the question of who had the burden of proof. The decision was that the Department's original order of suspension was binding and enforceable until vacated in the manner provided by law. Beaver's remedy was (1) to request a hearing before the Department and (2) to appeal an adverse administrative decision to the Superior Court, where he was entitled to a full *de novo* review by the judge.

When the judge has expressly placed the burden of proof upon the wrong party, and conflicting inferences may be drawn from the evidence, it is impossible for an appellate court to know whether the erroneous allocation of the burden dictated his findings of fact. This proceeding, therefore, must be remanded to the Superior Court for a rehearing. If, upon the rehearing, at which the burden of proof is placed upon the Department, the court finds that petitioner did not wilfuly refuse to submit to the Breathalyzer test at the time of his arrest on 27 September 1969, it will reverse the Department's order revoking petitioner's license for sixty days. If it finds that petitioner did wilfully refuse to take the test the court will sustain the Department's order suspending petitioner's license and remand the cause to the Department so that it may specify the additional sixty days' suspension.

[12] Petitioner's contention, made for the first time in his brief on appeal, that the twelve months' suspension of his license which followed his plea of guilty to the charge of drunken driving constituted his "full penalty," is untenable.

The suspension of a license for refusal to submit to a chemical test at the time of an arrest for drunken driving and a suspension which results from a plea of guilty or a conviction of that charge are separate and distinct revocations. The interpretation which petitioner seeks would render G.S. 20-16.2 superfluous and meaningless. Petitioner's guilty plea in no way exempted him from the mandatory effects of the sixty-day suspension of his license if he had wilfully refused to take a chemical test. *Hoban v. Rice,* 22 Ohio App. 2d 130, 259 N.E. 2d 136. In *Prichard v. Battle,* 178 Va. 455, 17 S.E. 2d 393, petitioner's license was revoked for leaving the scene of an accident. Thereafter the Governor pardoned him for the criminal offense. The Supreme Court of Appeals of Virginia held that the revocation of his driver's license, not being a part of the punishment for the offense, was not affected by the pardon.

Under implied consent statutes such as G.S. 20-16.2, the general rule is that neither an acquittal of a criminal charge of operating a motor vehicle while under the influence of intoxicating liquor, nor a plea of guilty, nor a conviction has any bearing upon a proceeding before the licensing agency for the revocation of a driver's license for a refusal to submit to a chemical test. 60 C.J.S. *Motor Vehicles* § 164.16 (1969). "It is well established that the same motor vehicle operation may give rise to two separate and distinct proceedings. One is a civil and administrative licensing procedure instituted by the Director of Motor Vehicles to determine whether a person's privilege to drive is revoked. The other is a criminal action instituted in the appropriate court to determine whether a crime has been committed. Each action proceeds independently of the other, and the outcome of one is of no consequence to the other." *Ziemba v. Johns,* 183 Neb. 644, 646, 163 N.W. 2d 780, 781. *Accord, Prucha v. Department of Motor Vehicles,* 172 Neb. 415, 110 N.W. 2d 75; 88 A.L.R. 2d 1055; *Marbut v. Motor Vehicle Department,* 194 Kan. 620, 400 P. 2d 982; *Gottschalk v. Sueppel,* 258 Iowa 1173, 140 N.W. 2d 866; *State v. Muzzy,* 124 Vt. 222, 202 A. 2d 267; *State v. Starnes,* 21 Ohio St. 2d 38, 254 N.E. 2d 675. Annot., 88 A.L.R. 2d 1065 (1961) and A.L.R. 2d Later Case Service collect the pertinent cases.

*Serenko v. Bright,* 263 Cal. App. 2d 682, 70 Cal. Rptr. 1, involves facts strikingly similar to this case. In *Serenko,* petitioner "asserted that she refused to take any of the chemical tests offered because she admittedly was intoxicated and she saw no reason to take any chemical test further to demonstrate that fact." She also asserted that she did not fully understand the penalty for failure to take the test and that the court's finding that she refused to take the test was not supported by the evidence. In sustaining the revocation the Court of Appeal said: It is "neither relevant nor material to the application of the statute whether the person charged pleads guilty or not. At the time the person arrested refuses the chemical test, there is no assurance that upon arraignment he or she will plead guilty. The arrestee by subsequent guilty plea has no power to avoid retroactively the consequences of his or her earlier refusal to cooperate." *Id.* at 688, 70 Cal. Rptr. at 5. *Accord, August v. Department of Motor Vehicles,* 264 Cal. App. 2d 52, 70 Cal. Rptr. 172.

The General Assembly has seen fit to except North Carolina from the general rule that a licensee's subsequent acquittal of a drunken driving charge has no bearing upon a proceeding to revoke his license because of his refusal to submit to the chemical test at the time of his arrest. G.S. 20-16.2 (c) provides that any person arrested for drunken driving who refuses to submit to a chemical test to determine the alcoholic content of his blood *and who is thereafter acquitted of the charge* shall have his driver's license restored immediately. "Chemical tests eliminate mistakes from objective observation alone, and they disclose the truth when a driver claims he has drunk only a little and could not be intoxicated. They protect the person who has not been drinking to excess but has an accident and has the odor of alcohol on his breath. They save a person from a drunken driving charge when his conduct creates the appearance of intoxication but who actually is suffering from other causes over which he has no control. *Marbut v. Motor Vehicle Department, supra* at 623, 400 P. 2d at 985. It would seem, therefore, that one who is not under the influence of an intoxicant has scant incentive to refuse the test and that the North Carolina exception encourages those who are under the influence to refuse the test in the hope that the State might be unable to prove their guilt without it. Be that as it may, the conditions under which a driver's license may be revoked are determined

by the legislature. Petitioner was not acquitted; he pled guilty as charged. The only issue in this proceeding is whether he *wilfully* refused to take the test. If the Superior Court finds that he did, his license must be revoked for an additional sixty days; otherwise not.

          Error and remanded.