STATE OF NORTH CAROLINA v. JERRY DEAN EUBANKS

No. 67

(Filed 1 June 1973)

1. **Arrest and Bail § 3— illegal arrest — constitutional arrest**

    Where defendant did not operate his vehicle on a public street or highway in the presence of an officer but the officer arrested him for driving under the influence without first obtaining a warrant, the arrest was illegal under State law; however, the arrest was not unconstitutional since the officer had probable cause to make it.

2. **Automobiles § 126; Criminal Law § 64— illegal arrest admissibility of resulting evidence**

    Nothing in North Carolina law requires the exclusion of evidence obtained following an arrest which is constitutionally valid but illegal for failure first to obtain an arrest warrant; therefore, breathalyzer test results were properly admitted into evidence in defendant's trial for driving under the influence, though defendant's arrest for the offense was illegal.

3. **Arrest and Bail § 3; Automobiles § 126— basis for giving breathalyzer test — effect of illegal arrest**

    G.S. 20-16.2(a) provides that administration of the breathalyzer test hinges solely upon the law enforcement officer having reasonable grounds to believe the person to have been driving or operating a motor vehicle on the highway while under the influence of intoxicating liquor, and not upon the legality of defendant's arrest for that offense.

4. **Automobiles § 126— instructions as to consequences for refusal to take breathalyzer test — admissibility of results**

    Breathalyzer test results were not rendered inadmissible in defendant's trial for driving under the influence where a police officer

State v. Eubanks

instructed defendant that his driver's license could be suspended for sixty days if he refused to take the test, since that instruction was correct and did not constitute coercion. G.S. 20-16.2(c).

5. **Arrest and Bail § 3; Automobiles § 126— illegal arrest — coercion to take breathalyzer test — admissibility of results**

Defendant's contention that his consent to take the breathalyzer test was coerced by the illegality of his arrest is without merit, since an illegal arrest, unaccompanied by violent or oppressive circumstances, is no more coercive than a legal arrest.

6. **Automobiles § 126— breathalyzer test results — requirements for admissibility**

Evidence was sufficient to establish the admissibility of breathalyzer test results under the requirements of G.S. 20-139.1(b) where that evidence tended to show that the administering officer had attended breathalyzer operators' school, received a license issued by the State Board of Health and followed certain rules and regulations set by the Board for administering the test.

Chief Justice BOBBITT dissents.

APPEAL by defendant from judgment of *Martin, J.,* 28 August 1972 Session, GASTON Superior Court.

Defendant was tried upon the original warrant, sufficient in form, charging him with operating a motor vehicle on a public street or highway on 22 November 1971 while under the influence of intoxicating liquor.

The State's evidence tends to show that Mrs. Coanne Gillespie, after giving a right turn signal, prepared to turn her 1968 Buick from Armstrong Park Drive and enter Club Drive to her right. Her Buick was struck from behind by a Chevrolet driven by defendant Jerry Dean Eubanks. Defendant got out of his vehicle and said it was his fault. While he and Mrs. Gillespie were waiting for the arrival of the police, Mrs. Gillespie noticed "a strong smell of alcohol about Mr. Eubanks," and two of her passengers commented on it. Defendant said the sun had been in his eyes prior to the collision; but Mrs. Gillespie, who was traveling in the same direction, testified that she "did not have a bit of trouble with the sun." Other evidence indicated that at 3:30 p.m., the approximate time of the collision, the sun was to the west and on the left of drivers proceeding in the direction defendant and Mrs. Gillespie were driving.

When Officer J. R. Deaton arrived at the scene he observed defendant "bent over looking into his car." In response to the officer's inquiry defendant said he was driving the Chevrolet.

While producing his driver's license for the officer's inspection, defendant "was very hesitant and stumbled through his pocket book, and finally got his license out, and after he got his license, I noticed he had to lean against the car to keep steady. He was very unsteady on his feet, and at all times, he was leaning next to his vehicle to keep straight, and I noticed a strong odor of alcohol on his breath. I placed him under arrest for D.U.I., and after I had talked to him and made sure he was the driver, and he was, in my opinion—he was under the influence of some alcoholic beverage." Defendant was placed under arrest there at the scene and taken to the police station. A warrant was thereafter obtained and served upon him.

At the police station Officer J. R. Carter advised defendant of his rights concerning the breathalyzer. Officer Carter told him that "he had the choice of either taking the test or refusing the test; that if he refused the test, none would be given . . . that his license could be suspended for sixty days if he refused . . . that he had a right to call an attorney and have him present during the test, or he had a right to call any other witness for the test that he wanted." Twenty minutes later the officer asked defendant if he would submit to the breathalyzer test. "He said he would take the test," and it was accordingly administered by Officer Carter who recorded the reading of .27 on a breathalyzer operation check list.

Defendant testified that he got off work at 2 p.m. on 22 November 1971. He bought two six-packs of beer, drank one beer on the way to the home of his friend, Miles Oscar Huffstickler where he ate dinner and drank another beer. He then left for his own home. "I started up this slight incline and the sun was right in my face, and I reached up to pull the sun visor down, and as I did, I looked back down, and this lady was sort of sitting in the road and I hit my brakes and I hit her." According to defendant, at the time of the collision there were ten full cans of beer in his car. He testified that he was not under the influence of intoxicants when the collision occurred. However, he said he "was still shook up the next day, and didn't feel good, and had a headache."

Miles Oscar Huffstickler corroborated defendant's testimony with respect to the two beers consumed by defendant while in Huffstickler's presence on the afternoon of 22 November 1971. This witness stated that he last saw defendant at approximately 3 p.m. and the witness had no knowledge as to the

amount of intoxicants, if any, defendant drank after he left and before the collision.

The jury found defendant guilty as charged and from judgment imposing a suspended sentence upon the conditions therein named, defendant appealed to the Court of Appeals. The case was duly docketed there and certified to the Supreme Court for initial appellate review pursuant to the provisions of G.S. 7A-31(b)(4). Errors assigned will be noted in the opinion.

*Harris and Bumgardner by Don H. Bumgardner, Attorneys for defendant appellant.*

*Robert Morgan, Attorney General; William W. Melvin, Assistant Attorney General; and William B. Ray, Assistant Attorney General, for the State of North Carolina.*

HUSKINS, Justice.

Before pleading to the charge contained in the warrant defendant moved to suppress the results of the breathalyzer test "and the officer's observations of this defendant," contending such evidence was rendered inadmissible by the illegality of defendant's arrest without a warrant. Denial of the motion is assigned as error.

It is provided by G.S. 15-41 that a peace officer may make an arrest without a warrant: "(1) When the person to be arrested has committed a felony or misdemeanor in the presence of the officer, or when the officer has reasonable ground to believe that the person to be arrested has committed a felony or misdemeanor in his presence; . . . "

[1] Since this defendant did not operate his motor vehicle on a public street or highway "in the presence of the officer," and since the officer had no reasonable ground to believe defendant had done so, defendant's arrest without a warrant was illegal. *State v. Hill,* 277 N.C. 547, 178 S.E. 2d 462 (1971). Even so, the words "illegal" and "unconstitutional" are not synonymous. An arrest is constitutionally valid when the officers have probable cause to make it. Whether probable cause exists depends upon "whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 13 L.Ed. 2d 142,

85 S.Ct. 223 (1964) ; 5 Am. Jur. 2d *Arrest* §§ 44, 48; *State v. Harris,* 279 N.C. 307, 182 S.E. 2d 364 (1971) ; *State v. Streeter,* 283 N.C. 203, 195 S.E. 2d 502 (1973). Thus an arrest may be constitutionally valid and yet "illegal" under state law. Such is the case here.

There was probable cause to arrest defendant for operating a motor vehicle upon a public highway while under the influence of intoxicants, but G.S. 15-41 required the officer to obtain a warrant before making the arrest since the offense was not committed in his presence. Given probable cause, the federal constitutional exclusionary rule first enunciated in *Weeks v. United States,* 232 U.S. 383, 58 L.Ed. 652, 34 S.Ct. 341 (1914), and made applicable to the States in *Mapp v. Ohio,* 367 U.S. 643, 6 L.Ed. 2d 1081, 81 S.Ct. 1684 (1961), has no application. The fact that a warrant was not obtained before defendant was arrested is, in a constitutional sense, immaterial. The Constitution does not dictate the circumstances under which arrest warrants are required. *United States v. Bazinet,* 462 F. 2d 982 (8th Cir. 1972). Whether an arrest warrant must be obtained is determined by state law alone. Likewise, state law alone determines the sanction to be applied for failure to obtain an arrest warrant where one is required.

[2]   The issue then is this: When an arrest is constitutionally valid but illegal under the law of North Carolina, must the facts discovered or the evidence obtained as a result of the arrest be excluded as evidence in the trial of the action? The answer is no. An unlawful arrest may not be equated, as defendant seeks to do, to an unlawful search and seizure. All evidence obtained by searches and seizures in violation of the Federal Constitution is inadmissible in a state court. *Mapp v. Ohio, supra.* Such evidence is also inadmissible by statute in North Carolina. G.S. 15-27(a). But there is no such rule and no such statute in this State with respect to facts discovered or ·evidence obtained following an illegal arrest. Neither reason· nor logic supports the suggestion.

We hold that nothing in our law requires the exclusion of evidence obtained following an arrest which is constitutionally valid but illegal for failure to first obtain an arrest ʼwarrant. Defendant may, if so advised, redress his grievance for the warrantless arrest by a civil action for damages. *Eg. Perry v. Hurdle,* 229 N.C. 216, 49 S.E. 2d 400 (1948) ; *Hicks v̖. Nivens,*

210 N.C. 44, 185 S.E. 469 (1936). But the competency of the evidence obtained following his illegal arrest remains unimpaired.

[3]   Nothing in G.S. 20-16.2(a) is to the contrary. That section reads as follows:

> "(a) Any person who drives or operates a motor vehicle upon any highway or any public vehicular area shall be deemed to have given consent, subject to the provisions of G.S. 20-139.1, to a chemical test or tests of his breath or blood for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving or operating a motor vehicle while under the influence of intoxicating liquor. *The test or tests shall be administered at the request of a law-enforcement officer having reasonable grounds to believe the person to have been driving or operating a motor vehicle on a highway or public vehicular area while under the influence of intoxicating liquor.* The law-enforcement officer shall designate which of the aforesaid tests shall be administered. Before any of the tests shall be administered, the accused person shall be permitted to call an attorney and to select a witness to view for him the testing procedures; providing, however, that the testing procedures shall not be delayed for these purposes for a period of time of over thirty minutes from the time the accused person is notified of these rights." (Emphasis added.)

It is apparent from the emphasized portion of the statute that administration of the breathalyzer test is not dependent upon the legality of the arrest but hinges solely upon "the . . . law-enforcement officer having reasonable grounds to believe the person to have been driving or operating a motor vehicle on a highway or public vehicular area while under the influence of intoxicating liquor." It follows that defendant's motion to suppress was properly denied.

[4]   Defendant further contends that his consent to take the breathalyzer test was not voluntary but coerced "by being told by the officer that he could lose his driver's license for sixty (60) days if he refused to take the test." From this, defendant argues that the results of the test were inadmissible.

In *State v. Mobley,* 273 N.C. 471, 160 S.E. 2d 334 (1968), the officers erroneously told defendant that if he refused to

submit to the breathalyzer test "it will be used as an assumption of guilt in court." It was held that the coerciveness of the misstatement required the exclusion of the test results.

Here, Officer Carter told defendant that his license "could be suspended for sixty days if he refused" to take the test. This statement is correct. G.S. 20-16.2(c) provides that if a person under arrest willfully refuses to take a breathalyzer test, none shall be given, but the Department of Motor Vehicles upon receipt of a sworn report to that effect "shall revoke his driving privilege for a period of 60 days." Hence no coercive misstatement was made in this case.

[5] Defendant additionally contends that his consent to take the breathalyzer was coerced by the illegality of the arrest. There is no merit in this contention. We hold that an illegal arrest, unaccompanied by violent or oppressive circumstances, is no more coercive than a legal arrest. By analogy, the language of Justice Branch, speaking for the Court in *State v. Moore,* 275 N.C. 141, 166 S.E. 2d 53 (1969), where a voluntary confession following an illegal arrest was held admissible, is appropriate here:

"We condemn any illegal act by police officers. However, when viewed in the narrow field of voluntary confession, we fail to see why an illegal arrest—unaccompanied by violent or oppressive circumstances—would be more coercive than a legal arrest.

"Both reason and weight of authority lead us to hold that every statement made by a person in custody as a result of an illegal arrest is not *ipso facto* involuntary and inadmissible, but the facts and circumstances surrounding such arrest and the in-custody statement should be considered in determining whether the statement is voluntary and admissible. Voluntariness remains as the test of admissibility."

On this point defendant is saying, in effect, that had he known his arrest was illegal he would not have voluntarily consented to take the breathalyzer test. Even so, the fact remains that he did voluntarily consent to take it, and voluntariness is the test of admissibility. This contention fails for lack of merit.

[6] Finally, defendant contends the results of the breathalyzer were inadmissible because the State failed to prove that the test

was performed according to methods approved by the State Board of Health as required by G.S. 20-139.1 (b).

In *State v. Powell,* 279 N.C. 608, 184 S.E. 2d 243 (1971), we said:

"G.S. 20-139.1 (b) requires two things before a chemical analysis of a person's breath or blood can be considered valid under that section. First, that such analysis shall be performed according to methods approved by the State Board of Health, and second, that such analysis be made by a person possessing a valid permit issued by the State Board of Health for this purpose. Officer Pegram had a valid permit issued by the Board to conduct such analysis and testified that he made the analysis in this case according to methods approved by that Board. We hold this sufficient to meet the requirements of G.S. 20-139.1 (b)."

Here, Officer Carter testified that he attended the breathalyzer operators' school conducted by the Department of Community Colleges at Gaston College; that he received a certificate issued by the North Carolina State Board of Health licensing him to perform chemical analyses of the breath to determine the blood alcohol level; that when he received the certification, "they gave me certain rules and regulations to follow. I did follow them on this occasion." We hold this evidence sufficient to establish the admissibility of the breathalyzer test results under the requirements of G.S. 20-139.1 (b). There is no merit in this contention.

Since .10 percent by weight of alcohol in the blood gives rise to the presumption that a person is under the influence of intoxicants, G.S. 20-139.1 (a) (1), defendant's strenuous effort to exclude the .27 percent reading is quite understandable. It loudly corroborates the testimony of the arresting officer and other witnesses and leaves little room for doubt that the jury reached the correct result. Defendant's testimony that he had consumed only two bottles of beer suggests perjury rather than sobriety.

Defendant having failed to show error, the verdict and judgment will be upheld.

No error.

Chief Justice BOBBITT dissents.