IN RE: SUSPENSION OF THE LICENSE TO OPERATE A MOTOR VEHICLE
OF STEPHEN WAYNE VALLENDER NCDL #: 3181140

No. 855SC1280

(Filed 3 June 1986)

Automobiles § 126.3— breathalyzer test—30-minute delay—point from which 30
minutes begin

   Pursuant to N.C.G.S. § 20-16.2(a)(6), a person charged with an implied con-
sent offense has the right to contact an attorney and select a witness to view
the testing procedures impliedly consented to, "but the testing may not be
delayed for these purposes longer than 30 minutes from the time he is notified
of his rights"; therefore, there was no merit to defendant's contention that his
30 minutes began to run when the formal request to submit to the test was
made rather than when he was advised of his rights.

APPEAL by petitioner from *Winberry, Judge*. Judgment en-
tered 22 July 1985 in Superior Court, NEW HANOVER County.
Heard in the Court of Appeals 15 April 1986.

Petitioner Vallender's driving privilege was suspended by re-
spondent Division of Motor Vehicles for willful refusal to submit
to chemical analysis. He petitioned for judicial review pursuant to
G.S. 20-25. The trial court found that all conditions for suspension
were met and that petitioner's refusal was willful. Accordingly,
the trial court dissolved all restraining orders and affirmed the
suspension. Petitioner appeals.

The facts are not disputed. Petitioner was charged with an
implied consent offense, and the charging officer, Fields, had rea-
sonable grounds to believe he had committed the offense. Officer
Fields informed petitioner that he was taking him in for chemical
breath analysis and brought him before Deputy Sheriff Murphy, a
duly qualified and authorized chemical analyst at the New
Hanover Law Enforcement Center. Murphy first saw petitioner at
1:35 a.m., read petitioner a form entitled "Rights of Person Re-
quested to Submit to a Chemical Analysis to Determine Alcohol
Concentration under G.S. 20-16.2(a)" and then gave him a copy of
the form.

The form, which was read *verbatim* and then given to peti-
tioner, contained the following language:

   You have been charged with operating a vehicle upon a
highway or public vehicular area while committing an implied

consent offense. In my presence the charging officer will request you to submit to a chemical analysis to determine the alcohol concentration of your body. It is first required that you be informed both orally and given a notice in writing of your rights, which are as follows:

\* \* \*

6. You have the right to call an attorney and select a witness to view for you the testing procedures, but the testing may not be delayed for these purposes longer than 30 minutes from the time you are notified of your rights.

At 1:39 a.m. petitioner answered that he understood each of his rights and signed the form.

Petitioner made several phone calls. At 1:54 a.m. Fields formally requested that petitioner submit to the test. Petitioner refused. Murphy informed petitioner that he would wait the full 30 minutes. At 2:10 a.m., Murphy again requested that petitioner submit to the test. Again petitioner refused. Murphy made written notation that petitioner had refused to submit. At no time before or after 2:10 a.m. did petitioner agree to take the test. On these facts the court found that petitioner's refusal was willful.

*Attorney General Thornburg, by Assistant Attorney General William B. Ray, for respondent-appellee Division of Motor Vehicles.*

*Hewlett & Collins, by John C. Collins, for petitioner-appellant.*

EAGLES, Judge.

The sole question presented by this appeal is whether the court erred in finding that petitioner willfully refused to submit by concluding that the thirty minute period began to run at 1:39 a.m., when he was advised of his rights, instead of at 1:54 a.m., when the formal request was made.

By statute, a person charged with an implied consent offense has the right to contact an attorney and select a witness to view the testing procedures impliedly consented to, "but the testing

may not be delayed for these purposes longer than 30 minutes *from the time he is notified of his rights.*" G.S. 20-16.2(a)(6) (emphasis added). The 30 minute period from the advising of rights is a matter of legislative grace. *State v. Howren,* 312 N.C. 454, 323 S.E. 2d 335 (1984). Petitioner had no constitutional right to refuse to submit to chemical analysis under the implied consent statutes, nor did he have a constitutional right to any waiting period longer than 30 minutes. *Id.* His right to the waiting period was purely statutory. G.S. 20-16.2(a)(6) allowed him 30 minutes from the time he was advised of his rights. We are aware of no other statutory waiting periods. Nothing else appearing, the court's finding was entirely correct.

Petitioner relies solely on *Mathis v. N.C. Div. of Motor Vehicles,* 71 N.C. App. 413, 322 S.E. 2d 436 (1984). Mathis was advised of his rights and was requested to submit to the test by the charging officer at the same time. Thirty minutes later, Mathis, having contacted his attorney, refused a third request to submit and a refusal affidavit was prepared. Twenty minutes later, Mathis volunteered to take the test, but the officers refused to administer it. This Court affirmed the trial court's finding that Mathis' refusal was willful and affirmed the suspension. Chief Judge Vaughn wrote:

> The standard of "willful refusal" in this context is clear. *Once apprised of one's rights and having received a request to submit, a driver is allowed 30 minutes in which to make a decision. A "willful refusal" occurs whenever a driver "(1) is aware that he has a choice to take or to refuse to take the test; (2) is aware of the time limit within which he must take the test; (3) voluntarily elects not to take the test; and (4) knowingly permits the prescribed thirty-minute time limit to expire before he elects to take the test." Etheridge v. Peters,* 301 N.C. 76, 81, 269 S.E. 2d 133, 136 (1980).

71 N.C. App. at 415, 322 S.E. 2d at 437-38. [Emphasis added.]

Relying on the emphasized sentence, petitioner argues that his 30 minute period began to run *only when he received a formal request* after being advised of his rights, and he therefore did not receive the entire 30 minutes in which to make a decision. We disagree. The emphasized sentence must be read in light of the facts in *Mathis,* which were that the rights were read and a formal re-

quest made at the same time. The *Mathis* court did not reach the question presented here and the language relied on by petitioner is essentially *dicta* which does not control here. More persuasive is our review of the criteria set out by the Supreme Court in *Etheridge*: there is no mention of a requirement for a "formal request." Instead, *Etheridge* focuses on the driver's awareness of his rights and of the consequences of refusal. Here there is no dispute that petitioner was apprised of those matters both orally and in writing, and received all the protection the law requires.

We note that the *Mathis* court went on to consider a contention that the charging officer must make a "present request" rather than a "future" one. The court rejected the contention that there is a need for any "precise terminology" or "contrived precision" which would hamper effective enforcement of drunk driving laws. 71 N.C. App. at 416, 322 S.E. 2d at 438; *see also Rice v. Peters*, 48 N.C. App. 697, 269 S.E. 2d 740 (1980). Like the court in *Rice*, the *Mathis* court found the suspect's rights sufficiently protected and affirmed the suspension.

Here petitioner was arrested and brought to a law enforcement office at 1:30 in the morning for a breath test. He was informed of the charges against him and informed that "the charging officer *will* request you to submit to a chemical analysis." [Emphasis added.] He was then advised of his right to 30 minutes to contact an attorney. Petitioner was well advised of what was to happen and that he had 30 minutes from the time he was advised of his rights in which to decide whether to submit to the breath test.

Petitioner received the protection required by the law. The court's findings are supported by the record and they in turn support the judgment. No other error appears on the face of the record.

Affirmed.

Judges WEBB and PARKER concur.