DAVID ANDREW ROCK, III, Petitioner-Appellant v. WILLIAM S. HIATT, Commissioner, NORTH CAROLINA DIVISION OF MOTOR VEHICLES, Respondent-Appellee

No. 903SC551

(Filed 6 August 1991)

1. **Automobiles and Other Vehicles § 126.3 (NCI3d)— impaired driving—willful refusal of chemical test—insufficient findings**

   The trial court erred in determining that petitioner "willfully refused" to submit to a chemical test without making findings as to whether petitioner knowingly permitted the prescribed thirty-minute time period to expire before he elected to take the test where the evidence at trial was conflicting on this issue. N.C.G.S. § 20-16.2.

   **Am Jur 2d, Automobiles and Highway Traffic § 305.**

2. **Automobiles and Other Vehicles § 126.2 (NCI3d)— impaired driving—willful refusal of chemical test—implied consent offense—reasonable belief by officer**

   In determining that petitioner willfully refused to submit to a chemical test, the trial court's finding that the arresting officer had reasonable grounds to believe that petitioner had committed the implied consent offense of impaired driving was supported by evidence that the officer observed petitioner driving fast out of a motel parking lot; petitioner's vehicle hit a dip and bounced hard as it made a wide turn toward the officer; and after the officer stopped petitioner's vehicle, he noticed that petitioner had a strong odor of alcohol on his breath, petitioner slurred his speech, his eyes were glassy, and he was unable to walk without swaying.

   **Am Jur 2d, Automobiles and Highway Traffic §§ 304, 305.**

APPEAL by petitioner from judgment entered 28 February 1990 by *Judge John R. Friday* in CRAVEN County Superior Court. Heard in the Court of Appeals 5 December 1990.

The Division of Motor Vehicles suspended petitioner's driving privileges for willful refusal to submit to a blood test on 4 December 1988 under N.C. Gen. Stat. § 20-16.2. Petitioner subsequently requested a hearing before the Division of Motor Vehicles hearing officer, and the revocation was upheld on 30 January 1989.

On 23 February 1989, petitioner filed a petition with the Craven County Superior Court for a hearing *de novo*. The matter was heard 19 February 1990. On 20 February 1990, Judge Friday upheld the revocation and allowed a stay pending appeal. At Judge Friday's request, respondent drafted the proposed judgment and mailed it to Judge Friday with a copy to petitioner's attorney on 22 February 1990. Respondent's attorney received the signed copy from Judge Friday on 27 February 1990 and mailed the original and copies to the Clerk of the Craven County Superior Court that day. On 28 February 1990, respondent's attorney received a copy of petitioner's letter to Judge Friday objecting to the proposed judgment. The signed judgment revoking petitioner's driving privileges had not been sent to the Driver License Section of the Division of Motor Vehicles for enforcement pending a hearing and decision by Judge Friday.

Petitioner appeals from the judgment of 28 February 1990.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Mabel Y. Bullock, for the respondent-appellee State.*

*Jeffrey L. Miller for petitioner-appellant.*

ORR, Judge.

We note at the outset that petitioner voluntarily abandoned assignment of error three concerning the trial court's signing of the judgment on 22 February 1990 and filing the same on 28 February 1990 prior to considering petitioner's objections to the proposed judgment. We shall now address the remaining assignments of error.

I.

[1] Petitioner's assignments of error focus upon two elements of N.C. Gen. Stat. § 20-16.2. Petitioner first argues that the trial court erred in determining that petitioner had "willfully refused" to submit to a chemical analysis on the grounds that he did not receive the statutory 30-minute waiting period to contact an attorney, that he was denied access to any method of personally communicating with counsel and that he, in fact, asserted his statutory right before the expiration of the 30-minute period and consented to the chemical analysis test. For the following reasons, we hold that the trial court erred in its order of 28 February 1990, in concluding that petitioner willfully refused to submit to a chemical analysis and test to determine his blood alcohol level.

We therefore reverse and remand for additional action consistent with this opinion.

Under N.C. Gen. Stat. § 20-16.2, upon revocation of a petitioner's driving privileges and an appeal *de novo* to the Superior Court, the trial court's review is limited to a determination of whether:

(1) The person was charged with an implied-consent offense;

(2) The charging officer had reasonable grounds to believe that the person had committed an implied-consent offense;

(3) The implied-consent offense charged involved death or critical injury to another person, if this allegation is in the affidavit;

(4) The person was notified of his rights as required by subsection (a); and

(5) The person willfully refused to submit to a chemical analysis upon the request of the charging officer.

N.C. Gen. Stat. §§ 20-16.2(d) and (e) (1989).

Under the statute, the respondent has the burden of proof to show that petitioner "willfully refused to submit to a chemical analysis." *Joyner v. Garrett, Comr. of Motor Vehicles*, 279 N.C. 226, 236, 182 S.E.2d 553, 560, *reh'g denied*, 279 N.C. 397, 183 S.E.2d 241 (1971).

Under § 20-16.2(a)(6), a person charged with an implied consent offense (such as driving under the influence of intoxicating liquors) "has the right to call an attorney and select a witness to view for him the testing procedures, but the testing may not be delayed for these purposes longer than 30 minutes from the time he is notified of his rights." N.C. Gen. Stat. § 20-16.2(a)(6) (1989).

In *Seders v. Powell, Comr. of Motor Vehicles*, 298 N.C. 453, 259 S.E.2d 544 (1979), our Supreme Court stated that § 20-16.2(a)(4) (now § 20-16.2(a)(6) ) gives a petitioner "the right to have advice and support during the testing process, . . . ." *Id.* at 458, 259 S.E.2d at 548. The Court further stated that "[t]he 30 minute time limit applies to both components of that one right [to call an attorney and select a witness]." *Id.* at 459, 259 S.E.2d at 548.

The *Seders* Court also held that although a petitioner has a statutory right to a 30-minute time limit to contact an attorney,

he does not have a constitutional right to confer with an attorney before deciding to submit to a breathalyzer test. *Id.* at 461, 259 S.E.2d at 550 (citations omitted). This is based on two grounds: (1) these revocation or suspension proceedings are civil, not criminal in nature; and (2) when a person "accepts the privilege of driving upon our highways [he consents] to the use of the breathalyzer test and has no constitutional right to consult a lawyer to void that consent." *Id.* at 462, 259 S.E.2d at 550 (citations omitted).

In 1980, our Supreme Court established a four-part test to determine what constitutes a "willful refusal" under the above statutory scheme. *Etheridge v. Peters, Comr. of Motor Vehicles,* 301 N.C. 76, 269 S.E.2d 133 (1980). Justice Exum (now Chief Justice), writing for the Court, stated that

> a willful refusal to submit to a chemical test within the meaning of [the statute] occurs where a motorist: (1) is aware that he has a choice to take or to refuse to take the test; (2) is aware of the time limit within which he must take the test; (3) voluntarily elects not to take the test; and (4) knowingly permits the prescribed thirty-minute time limit to expire before he elects to take the test.

*Id.* at 81, 269 S.E.2d at 136.

This Court has applied the *Etheridge* test in at least two cases. In *Mathis v. Division of Motor Vehicles,* 71 N.C. App. 413, 415, 322 S.E.2d 436, 437-38 (1984), *citing Etheridge,* this Court stated that willful refusal occurs when a petitioner is aware that he must make a choice of whether or not to take the test, aware of the 30-minute time limit to make a decision, voluntarily decides not to take the test, and knowingly allows the time limit to expire before he elects to take the test.

In *In re Vallender,* 81 N.C. App. 291, 294, 344 S.E.2d 62, 64 (1986), this Court held that a petitioner has 30 minutes from the time he was advised of his rights "in which to decide whether to submit to the breath test."

With these general principles in mind, we now turn to the case *sub judice.* On 4 December 1988, petitioner was arrested by Trooper H.M. Bullock of the North Carolina Highway Patrol for driving while impaired. Trooper Bullock testified that he observed petitioner driving fast out of a parking lot of the Sheraton Inn.

ROCK v. HIATT

[103 N.C. App. 578 (1991)]

Petitioner's vehicle hit a dip in front of the Sheraton and bounced hard as it made a wide right turn toward Trooper Bullock.

When Trooper Bullock stopped petitioner's vehicle, he observed that petitioner had a strong odor of alcohol on his person, petitioner slurred his speech, his eyes were glassy and he was unable to walk without swaying. At the time Trooper Bullock arrested petitioner, petitioner became argumentative and belligerent. Trooper Bullock and petitioner engaged in a scuffle, and petitioner was injured. Trooper Bullock then transported petitioner to Craven County Hospital for medical assistance.

At the hospital, petitioner continued to be belligerent and initially refused treatment. Because of petitioner's potential danger to himself or others, he was handcuffed and placed in a treatment room. He did not have access to a telephone and was not allowed to leave.

Trooper J.W. Brown, chemical analyst, arrived at the hospital to administer the chemical tests. At 2:25 a.m., Trooper Brown notified petitioner of his rights concerning submission to the chemical analysis. Petitioner acknowledged that he understood his rights and stated that he was not "taking any damn tests[.], [n]obody was sticking a needle in him[.] and [n]obody was touching him." Petitioner however requested that Trooper Brown contact his lawyer, Marc Chesnutt. Trooper Brown was unable to locate Mr. Chesnutt after dialing three separate numbers. Trooper Brown testified that he told petitioner that he was unable to locate Mr. Chesnutt, and petitioner responded that he would not take the test until he talked to his attorney. At no time did petitioner request that Trooper Brown attempt to contact another attorney, and Trooper Brown testified that he was not aware of anyone else attempting to contact an attorney on petitioner's behalf. Trooper Brown then determined at 2:36 a.m. that petitioner had "willfully refused" to submit to a chemical analysis and indicated that on the appropriate form.

The above evidence supports the trial court's findings that petitioner was advised of his rights to take or refuse to take the test, that he was aware of the 30-minute time limit to take the test and that he voluntarily elected not to take the test (at least until he contacted his attorney). Findings of Fact 3, 4 and 5. This meets the first three prongs of the *Etheridge* test.

The trial court, however, did not make any findings concerning the fourth prong of the test that the petitioner "knowingly permitted the prescribed thirty-minute time period to expire before he takes the test." The evidence at trial is conflicting on this issue, and the trial court made no attempt to resolve it in its order.

At trial, petitioner testified that about 20 minutes after he had been notified of his rights, "Barry Mills came in and he said the attorney said take the test. In which case at which time they indicated to me that it was too late to take the test, . . . ." Trooper Bullock had previously testified that to his knowledge, petitioner's friends were unable to locate an attorney for petitioner. The trial court did not address this testimony in its findings.

The trial court then concluded that petitioner had willfully refused the chemical analysis and therefore affirmed the revocation of petitioner's license without any findings addressing the fourth prong of the *Etheridge* test, and no resolution of the conflicting evidence.

A trial court's findings of fact are conclusive on appeal if supported by the evidence, *Henderson County v. Osteen*, 297 N.C. 113, 254 S.E.2d 160 (1979), although the evidence may support contrary findings. *Blackwell v. Butts*, 278 N.C. 615, 180 S.E.2d 835 (1971). While the above evidence supports the trial court's findings, the findings are insufficient under *Etheridge* to support the conclusion that petitioner willfully refused the chemical analysis.

We note two cases from this Court that hold that a "willful refusal" may be directed prior to the expiration of the 30-minute time period when it is obvious to the examiners that a petitioner does not intend to exercise his rights. *McDaniel v. Division of Motor Vehicles*, 96 N.C. App. 495, 386 S.E.2d 73 (1989), *cert. denied*, 326 N.C. 364, 389 S.E.2d 815 (1990); *State v. Buckner*, 34 N.C. App. 447, 238 S.E.2d 635 (1977). *McDaniel* reached its result by distinguishing *Etheridge* on the facts and by noting that its petitioner gave no indication to *anyone* that he wanted a lawyer or witness present. In *Buckner*, decided three years before *Etheridge*, the defendant was advised of his rights and then observed for approximately 20 minutes but would not say whether or not he would submit to chemical analysis. At that point, the breathalyzer operator determined that the defendant had willfully refused to take the test. This Court upheld the trial court's findings that this was a willful refusal within the meaning of the statute and

ROCK v. HIATT

[103 N.C. App. 578 (1991)]

based this upon the fact that it was obvious that defendant did not intend to exercise his right to contact an attorney or have a witness present. These decisions are not inconsistent with *Etheridge*. The statute is clear, and *Etheridge* dictates that the 30-minute grace period is available only when a petitioner intends to exercise his rights to call an attorney or have a witness present under the statute. In *Buckner* and *McDaniel*, it was clear that the defendants did not intend to exercise their rights at all.

For the above reasons, we hold that the trial court erred in determining the petitioner had "willfully refused" to submit to a chemical analysis under N.C. Gen. Stat. § 20-16.2 and remand to the trial court for additional findings based upon the evidence that petitioner either did or did not allow the 30-minute time period to expire before he agreed to take the test.

II.

[2] Petitioner's remaining assignment of error concerns whether the trial court erred in concluding that petitioner "willfully refused" to submit to chemical analysis under § 20-16.2, because the charging officer did not have reasonable grounds to believe that petitioner committed an implied-consent offense or probable cause to stop petitioner's vehicle and arrest him. We find no error.

As stated in part I above, § 20-16.2 limits the Superior Court's review of a driver's license revocation to a determination of, *inter alia*, whether "[t]he charging officer had reasonable grounds to believe that the person had committed an implied consent offense. N.C. Gen. Stat. § 20-16.2(d)(2) (1989). In this context, the term "reasonable grounds" is treated the same as "probable cause." *State v. Eubanks*, 283 N.C. 556, 196 S.E.2d 706, *reh'g denied*, 285 N.C. 597 (1973); *State v. Adkerson*, 90 N.C. App. 333, 368 S.E.2d 434 (1988). The *Eubanks* Court stated that probable cause exists if the facts and circumstances at that moment and within the arresting officer's knowledge and of which the officer had reasonably trustworthy information are such that a prudent man would believe that the [suspect] had committed or was committing a crime. *Id.* at 559, 196 S.E.2d at 708, *citing Beck v. Ohio*, 379 U.S. 89, 13 L.Ed.2d 142, 85 S.Ct. 223 (1964) (other citations omitted).

In the present case, the arresting officer, Trooper Bullock, testified that he observed petitioner's vehicle leaving the parking lot of the Sheraton Inn "running fast" (there is a lounge at the

Sheraton Inn that was closing about that time). Petitioner was driving the vehicle and "hit [a] dip, . . . bounced up hard, [and] made a right turn . . . ." Trooper Bullock testified that after he stopped petitioner's vehicle, he noticed "that his [petitioner's] speech was slurred, his eyes were glassy, he was swaying unsteady on his feet, had a strong odor of some intoxicating beverage on his breath." At that point, Trooper Bullock arrested petitioner for driving while impaired and attempted to take him in for a breathalyzer test.

Under the above principles of law, we find that Trooper Bullock had probable cause or reasonable grounds to believe that petitioner committed the implied-consent offense of driving while impaired. Therefore we find that the trial court did not err on this issue.

For the above reasons, we reverse and remand the trial court's judgment of 28 February 1990.

Reversed and Remanded.

Judges PHILLIPS and GREENE concur.