KENNETH LEE McDOWELL, Petitioner
v.
GEORGE TATUM, COMMISSIONER, NORTH CAROLINA DIVISION OF MOTOR VEHICLES, Respondent
No. COA06-1212
Court of Appeals of North Carolina.
Filed December 18, 2007
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Kathryne E. Hathcock, for the State-appellant.
Jeffrey M. Hedrick, for petitioner-appellee.
CALABRIA, Judge.
George Tatum, Commissioner of the North Carolina Division of Motor Vehicles ("respondent"), appeals from a 15 May 2006 order permanently enjoining respondent from revoking or suspending Kenneth Lee McDowell's ("petitioner") driving privilege for his refusal to submit to a chemical breath analysis. We reverse.
On 21 August 2005, just prior to 4:32 p.m., Sergeant Byron Clawson ("Sgt. Clawson") of the Banner Elk Police Department was dispatched to the scene of an accident on Highway 184. Sgt. Clawson arrived on the scene approximately three minutes later and observed a vehicle that was positioned upside down on the highway. Sgt. Clawson identified petitioner as the driver of the vehicle. Sgt. Clawson approached the vehicle and checked to see if petitioner or the two passengers were injured. When Sgt. Clawson asked petitioner to walk back to his patrol vehicle and take a seat inside, he noticed petitioner was unsteady on his feet. Sgt. Clawson noted that this unsteadiness could have been the result of trauma from the accident.
During the accident investigation, Sgt. Clawson noticed that petitioner's eyes were red and watery and his speech "slightly slurred." At the conclusion of the investigation, Sgt. Clawson noticed a strong odor of alcohol. When he asked petitioner to recite the alphabet, petitioner was unable to satisfactorily complete the test. Petitioner refused to attempt other field sobriety tests and refused to submit to an Alco-Sensor test. Sgt. Clawson then arrested petitioner for driving while impaired and transported him to the Avery County Law Enforcement Center.
At the law enforcement center, at 6:06 p.m., Sgt. Clawson asked petitioner to submit to a chemical analysis of petitioner's breath. Petitioner not only failed to verbally respond to Sgt. Clawson's request, he also failed to approach the Intoxilyzer machine. As a result, Sgt. Clawson recorded that petitioner willfully refused the test.
There was no evidence offered to establish the "actual or exact time" of the petitioner's automobile accident. Petitioner was not asked any questions about the time he consumed alcoholic beverages or how much he had consumed. The trial court found in Finding of Fact No. 10 that, "The Respondent has offered no evidence which tends to show that the alcoholic beverage in this case was consumed either prior to or during the operation of the vehicle as an essential element necessary for a violation of N.C. Gen. Stat. . 20-138.1."
Avery County Superior Court Judge Ronald K. Payne found the facts stated above and concluded on those facts that Sgt. Clawson had no reasonable grounds to believe that petitioner had committed an implied consent offense because there was "no evidence to show that any alcoholic beverage was consumed prior to or during the driving; therefore the officer's conclusion that the [petitioner] was impaired or that he had committed an implied consent offense is mere speculation." Judge Payne further concluded that "[t]he charging officer had no reasonable grounds to believe that the Petitioner had committed an implied consent offense and no basis to request a chemical analysis; therefore the revocation of his privilege to drive is without legal justification." He therefore ordered that respondent be enjoined from revoking or suspending petitioner's driving privilege as a result of his refusal to submit to chemical analysis. From that order, respondent appeals.
On appeal, respondent brings forth two assignments of error. In both assignments respondent argues the trial court erred in concluding, as a matter of law, that Sgt. Clawson did not have reasonable grounds to believe that petitioner was driving while impaired. We agree. First, we note that respondent has not assigned error to the trial court's findings of fact, and those findings are therefore binding on appeal. In re S.N.H. & L.J.H., 177 N.C. App. 82, 83, 627 S.E.2d 510, 512 (2006). Thus, our sole determination is whether the trial court erred by concluding, as a matter of law, that there were no reasonable grounds for Sgt. Clawson to believe petitioner was guilty of driving while impaired. We review conclusions of law de novo. State v. Ripley, 360 N.C. 333, 339, 626 S.E.2d 289, 293 (2006).
North Carolina General Statute § 20-16.2(a) states in relevant part as follows:
Any person who drives a vehicle on a highway or public vehicular area thereby gives consent to a chemical analysis if charged with an implied-consent offense. The charging officer shall designate the type of chemical analysis to be administered, and it may be administered when the officer has reasonable grounds to believe that the person charged has committed the implied-consent offense.
N.C. Gen. Stat. § 20-16.2(a) (2005).
"Reasonable grounds" has been held to be coterminous with "probable cause." Rock v. Hiatt, 103 N.C. App. 578, 584, 406 S.E.2d 638, 642 (1991). Thus, the issue here is whether Sgt. Clawson had probable cause to arrest petitioner for the implied consent offense of driving while impaired. "Probable cause exists if the facts and circumstances at that moment within the charging officer's knowledge and of which the officer had reasonably trustworthy information are such that a prudent man would believe that the suspect had committed or was committing an offense." Moore v. Hodges, 116 N.C. App. 727, 730, 449 S.E.2d 218, 220 (1994).
"[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 243 n.13, 76 L. Ed. 2d 527, 552 (1983). "Probable cause for an arrest has been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty." State v. Streeter, 283 N.C. 203, 207, 195 S.E.2d 502, 505 (1973) (citation omitted). "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." Maryland v. Pringle, 540 U.S. 366, 371, 157 L. Ed. 2d 769, 773 (2003).
Proceedings under N.C. Gen. Stat. . 20-16.2 for the civil revocation of a driver's license and the criminal prosecution of the driving while impaired charge have some important differences. Proceedings for revocation of the driver's license are civil not criminal. Joyner v. Garrett, 279 N.C. 226, 234, 182 S.E.2d 553, 559 (1971). However, this Court has held that "the quantum of proof necessary to establish probable cause to arrest in criminal driving while impaired cases and civil license revocation proceedings, notwithstanding the different burdens on the remaining elements, is virtually identical." Brower v. Killens, 122 N.C. App. 685, 690, 472 S.E.2d 33, 37 (1996). We recognize that there is a difference in the evidence necessary to convict a person ofdriving while impaired and the evidence necessary to show that there was probable cause to arrest a person for driving while impaired. Probable cause to arrest requires a fair probability, an amount of proof greater than "reasonable suspicion" but less than "preponderance of the evidence," "clear and convincing," or "beyond a reasonable doubt." See, e.g., Texas v. Brown, 460 U.S. 730, 742, 75 L. Ed. 2d 502, 513-14 (1983).
"At [a] revocation hearing [pursuant to G.S. 20.16-2], it [is] not the court's duty to try petitioner for the [DWI] offense; the only question [is] whether the [law enforcement officer] had probable cause to believe that petitioner had been driving while [impaired]." Church v. Powell, Comr. of Motor Vehicles, 40 N.C. App. 254, 257, 252 S.E.2d 229, 231 (1979). "A practical, nontechnical probability is all that is required." State v. Zuniga, 312 N.C. 251, 262, 322 S.E.2d 140, 146 (1984). For a law enforcement officer to have reasonable grounds to arrest, "it is not essential that the offense be shown to have been actually committed." State v. Jefferies, 17 N.C. App. 195, 198, 193 S.E.2d 388, 391 (1972).
The implied consent offense of DWI is defined in N.C. Gen. Stat. § 20-138.1(a) (2005), which states in pertinent part:
A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State:
(1) While under the influence of an impairing substance; or

(2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more.
(Emphasis added).
Our Supreme Court has concluded
that the acts of driving while under the influence of an impairing substance and driving with an alcohol concentration of .10 [now .08] are two separate, independent and distinct ways by which one can commit the single offense of driving while impaired. Since we must presume that the legislature did not act in vain but instead acted with care, deliberation and the full knowledge of prior and existing law, we interpret N.C.G.S. 20-138.1 as creating one offense which may be proved by either or both theories detailed in N.C.G.S. 20-138.1(a)(1) & (2).
State v. Coker, 312 N.C. 432, 440, 323 S.E.2d 343, 349 (1984) (emphasis in original) (holding that a citation is not facially invalid when it alleges a violation of N.C. Gen. Stat. § 20-138.1(a) but does not specify whether the State intends to prove a violation of (1) or (2)).
This Court has applied the probable cause standard in DWI driver's license revocation cases which are factually similar to the case sub judice. In Rawls v. Peters, Comr. of Motor Vehicles, 45 N.C. App. 461, 462, 263 S.E.2d 330, 331 (1980), a law enforcement officer found the petitioner in the driver's seat of a parked car and identified him as the driver. The petitioner had a strong odor of alcohol and his eyes were red and glassy. Id. The petitioner also staggered and had difficulty touching his nose during a sobriety test. Id. These facts and circumstances were held sufficient to provide probable cause to arrest the petitioner for "operating a motor vehicle while under the influence of an intoxicating liquor." Id., 45 N.C. App. at 466, 263 S.E.2d at 333.
Similarly, in Richardson v. Hiatt, a police officer responded to a one-car accident in the middle of the afternoon. Richardson v. Hiatt, 95 N.C. App. 196, 381 S.E.2d 866, modified on reh'g, 95 N.C. App. 780, 384 S.E.2d 62 (1989) (granting a new trial on the issue of willful refusal, but leaving undisturbed the determination of probable cause). At the scene, the petitioner was outside of the wrecked car, but the officer identified him as the driver. 95 N.C. App. at 198, 381 S.E.2d at 867. "The officer detected a strong odor of alcohol from [the] petitioner." Id. The petitioner asserted that he had fallen asleep at the wheel. Id., 95 N.C. App at 200, 381 S.E.2d at 868. These facts, notwithstanding the petitioner's complaints of a head injury, were sufficient to give the police officer "reasonable grounds to arrest petitioner for impaired driving." Id.; accord Poag v. Powell, Comr. of Motor Vehicles, 39 N.C. App. 363, 250 S.E.2d 93 (affirming license revocation for refusal to submit to breathalyzer because the petitioner's driving on the left side of the street, a strong odor of alcohol, a red and flushed face, and glassy and bloodshot eyes provided probable cause to arrest for DWI), disc. review denied, 296 N.C. 736, 254 S.E.2d 178 (1979); see also State v. Tedder, 169 N.C. App. 446, 610 S.E.2d 774 (2005) (finding substantial evidence of impairment where officer "smelled alcohol" and the defendant "slurred her speech . . . was unable to recite the alphabet and swayed when standing"). In the case sub judice, Sgt. Clawson wasdispatched in the middle of the afternoon to an upside down vehicle on the highway. Sgt. Clawson identified petitioner as the driver of the vehicle and later noticed a strong odor of alcohol on petitioner. Petitioner had red and watery eyes and slightly slurred speech, and was unable to recite the alphabet during a sobriety test.
In contrast to the cases cited above, the trial court based its decision in the case sub judice on its finding that there was no evidence as to the "actual or exact time" of the automobile accident or the time of any alcohol consumption by petitioner. Because of this lack of evidence regarding timing, the trial court concluded that the officer's determination "that the defendant was impaired or that he had committed an implied consent offense [was] mere speculation." The trial court further concluded that "there is no evidence to show that any alcoholic beverage was consumed prior to or during driving."
In Church, this Court held that "the [trial] court's conclusion that '(t)here is no evidence that the petitioner was under the influence of alcohol . . . at any . . . time material to this controversy,' is . . . to some degree irrelevant [to a determination of probable cause]." Church, 40 N.C. App. at 257, 252 S.E.2d at 231 (1979) (emphasis added) (vacating an order restraining the respondent from suspending the petitioner's driving privileges because evidence that the petitioner had been drinking heavily on New Year's Day, then had a drink at 4:00 p.m. the next day and wrecked his automobile three and a half hours later, provided probable cause that the petitioner had operated his vehicle under the influence of alcohol, even though the patrolman first saw the petitioner in a service station about an hour after the accident and the petitioner had consumed an additional nine to twelve ounces of liquor during that hour). We believe the trial court erred when it concluded that the lack of evidence as to the time of consumption trumped all the other findings of fact, which clearly support a determination of probable cause.
Further, the trial court's conclusions of law and wording of finding of fact No. 10[1] indicate that the officer could not have reasonably believed that petitioner had been driving while impaired because respondent did not present evidence sufficient to prove that the petitioner was in fact guilty of DWI. However, this is not the standard required for civil revocation of a driver's license. If it were, it would be impossible for a civil revocation of a driver's license to be valid unless the driver were also convicted of driving while impaired.
A blood alcohol content ("BAC") equal to or greater than the legal limit of 0.08 does create a per se violation of N.C. Gen. Stat. § 20-138.1(a), but because Section 20-138.1(a)(1) and (2) areeach independent grounds for violating the statute, a defendant can be convicted of violating N.C. Gen. Stat. § 20-138.1(a) even "where the BAC is entirely unknown." State v. Harrington, 78 N.C. App. 39, 46, 336 S.E.2d 852, 856 (1985) ("the statutory BAC is not a sine qua non of DWI") (citing State v. Sigmon, 74 N.C. App. 479, 328 S.E.2d 843 (1985) (noting that a BAC of less than the statutory limit does not create a presumption that defendant is not impaired)). Sgt. Clawson did not need to "establish that [petitioner] had consumed enough [alcohol] to exceed the legal limit" in order to have probable cause to arrest petitioner for violating N.C. Gen. Stat. § 20-138.1(a).
Sgt. Clawson was justified arresting petitioner under the circumstances at the scene of the accident and based upon the information he had at that time. He could not have known that after he took petitioner to the Avery County Law Enforcement Center, petitioner would refuse chemical testing, which test could have provided sufficient evidence that petitioner had in fact consumed a sufficient amount of alcohol to prove that he was legally impaired and even sufficient to show the timing of the petitioner's alcohol consumption. Sgt. Clawson would have had no way of knowing, when he arrested petitioner, that he would be unable to develop any other additional evidence regarding petitioner's alcohol consumption or timing of the accident for use in the driving while impaired prosecution. He knew enough to have a reasonable belief that petitioner had been driving while impaired, and that was all he needed to know for purposes of requesting chemical testing under N.C. Gen. Stat. § 20-16.2.
For purposes of revocation of the petitioner's driver's license under N.C. Gen. Stat. § 20-16.2, all the respondent must prove is that the officer had "reasonable grounds to believe" that the petitioner had been driving while impaired, which is the same thing as probable cause to arrest petitioner. Respondent does not have to prove that the petitioner is in fact guilty beyond a reasonable doubt of the underlying implied consent offense in order for the civil revocation to be valid. In this case, there was sufficient evidence, based on the facts found by the trial court, to give Sgt. Clawson reasonable grounds to believe petitioner had been driving while impaired.
The case sub judice is factually indistinguishable from our precedents in which we have found probable cause for a DWI arrest. Because Sgt. Clawson had probable cause to arrest petitioner for DWI, the trial court erred in concluding Sgt. Clawson lacked reasonable grounds to believe petitioner committed an implied consent offense and accordingly had no basis to request a chemical breath analysis.
Reversed.
Judges McCULLOUGH and STROUD concur.
Report per Rule 30(e).
NOTES
[1] Finding of Fact No. 10 reads as follows:

The Respondent has offered no evidence which tends to show that the alcoholic beverage in this case was consumed either prior to or during the operation of the vehicle as an essential element necessary for a violation of N.C.G.S. 20-138.1.