STATE OF NORTH CAROLINA v. ALLEN T. SUMMERS, JR., Defendant

No. COA98-383

(Filed 6 April 1999)

### 1. Motor Vehicles— driving while impaired—willful refusal of breath analysis—litigated at license revocation

The trial court erred in a DWI prosecution by denying defendant's motion in limine and overruling his objection at trial to evidence of his single breath analysis. A single analysis is admissible only if the subsequent breath sample is a willful refusal; here, the issue of willful refusal had been litigated in defendant's favor at a prior DMV license revocation proceeding and appeal to superior court. The District Attorney was fully represented and protected by the appearance of the Attorney General in the license revocation appeal and both prongs of the collateral estoppel test are satisfied.

### 2. Motor Vehicles— driving while impaired—admissibility of refusal of chemical analysis—previously litigated in license revocation

The trial court erred in a DWI prosecution by admitting evidence of a refusal to submit to chemical analysis under N.C.G.S. § 20-139.1 when a prior court had considered "willful refusal" in a DMV license revocation appeal and determined that defendant never actually refused the intoxilyzer. This holding is limited to collaterally estopping the relitigation of issues in a criminal DWI case when those exact issues have been litigated in a civil license revocation hearing with the Attorney General representing DMV in superior court and in no way restricts the outcome of civil DMV license revocation and criminal DWI cases, as both may proceed independently with different outcomes.

Appeal by defendant from judgment entered 9 October 1997 by Judge Milton Read in Durham County Superior Court. Heard in the Court of Appeals 5 January 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General Isaac T. Avery, III, for the State.*

*James D. Williams, Jr. for defendant-appellant.*

HUNTER, Judge.

Defendant appeals from a conviction of driving while subject to an impairing substance (DWI) in violation of N.C. Gen. Stat. § 20-138.1 (1993).

The State's evidence shows that defendant was operating his vehicle on 23 March 1996 at approximately 10:55 p.m. in Durham, North Carolina. Trooper Tony Gibson of the North Carolina State Highway Patrol stopped defendant after he was observed overtaking and passing a vehicle while crossing a double yellow line. When Trooper Gibson stopped the vehicle he noticed an odor of alcohol emanating from the defendant. When questioned as to whether he had anything to drink that evening, defendant responded in the affirmative. Defendant walked to the trooper's patrol car with an unsteady gate. Once inside the patrol car, Trooper Gibson noticed defendant's red and glassy eyes and a strong odor of alcohol.

Trooper Gibson subsequently placed the defendant under arrest, read defendant his Miranda rights and proceeded to the magistrate's office, where defendant was escorted to a room where the chemical analysis test (intoxilyzer test) is given to determine a defendant's blood alcohol content. Defendant was informed of his right not to submit to the intoxilyzer test and the consequences of such a refusal.

Trooper Gibson waited the required observation period and then asked the defendant to submit to the intoxilyzer test. After several tries, the defendant gave a sufficient sample which the instrument declared invalid. Trooper Gibson reset the intoxilyzer and informed the defendant that he needed another breath sample. Defendant gave a sufficient sample on the first try and the intoxilyzer registered his alcohol concentration as 0.11, recorded at 00:08 (12:08 a.m.).

For the third test, Trooper Gibson warned the defendant three times to blow correctly or he would be marked as a refusal. Trooper Gibson testified that on the third chance, the defendant did not give a sufficient sample and he marked defendant as a refusal, recorded at 00:09 (12:09 a.m.). Defendant pleaded for another test and Trooper Gibson informed him that the intoxilyzer will not allow additional tests where a person is marked as a refusal. Subsequently, Trooper Gibson administered field sobriety tests on the defendant and charged him with driving while impaired.

On 24 March 1996, defendant was notified by the North Carolina Division of Motor Vehicles (DMV) that his driver's license would be

revoked pursuant to N.C. Gen. Stat. § 20-16.2(i) (1993) on the grounds that he willfully refused to submit to the intoxilyzer test. Defendant requested a hearing before the DMV pursuant to N.C. Gen. Stat. § 20-16.2(d), which was held 24 August 1996. At that time, the revocation of defendant's license was sustained by the DMV hearing officer. Defendant filed a petition for a hearing *de novo* on the issue of whether he willfully refused to submit to a chemical analysis. Defendant's petition was heard in the Civil Session of Superior Court by the Honorable David LaBarre. Judge LaBarre issued an order concluding that the defendant did not willfully refuse to submit to a chemical analysis and ordered that the revocation order be dismissed.

The record on appeal indicates that at his DWI district court trial, defendant was found guilty of DWI on 7 October 1996. Defendant appealed to superior court for a *de novo* review. The matter was tried at the 9 October 1997 Criminal Session of Superior Court of Durham County, the Honorable Milton Read presiding. Defendant was found guilty of DWI and the court sentenced the defendant at Level 5, imposing a suspended sentence and a fine. Defendant appeals.

[1] Defendant argues that the trial court erred by denying his motion *in limine* and overruling his objection at trial to exclude evidence of defendant's single breath analysis of 0.11. Sequential intoxilyzer test results are required in order to be admitted into evidence to prove a person's particular alcohol concentration; however, a single breath analysis is admissible only if the subsequent breath sample is a "willful refusal" under N.C. Gen. Stat. § 20-16.2(c). N.C. Gen. Stat. § 20-139.1(b3) (1993). Defendant's refusal to submit to the intoxilyzer test can give rise to proceedings to revoke his driver's license only if it is a "willful refusal." *See* N.C. Gen. Stat. § 20-16.2. In the appeal of his driver's license revocation, the defendant and the Attorney General, representing DMV, appeared before Superior Court Judge LaBarre and litigated the issue of defendant's "willful refusal" to take the intoxilyzer test under N.C. Gen. Stat. § 20-16.2. Judge LeBarre concluded that the defendant "did not willfully refuse to submit to a chemical analysis upon the request of the charging officer" and overruled the revocation of the defendant's driver's license. In defendant's DWI trial, Judge Read instructed the jury to consider the intoxilyzer test result only if they found the defendant had subsequently "willfully refused" the intoxilyzer test. Under the doctrine of collateral estoppel, defendant contends that the issue of willful refusal was resolved in the DMV license revocation appeal in superior court (case

I) and therefore could not be relitigated in the criminal DWI case (case II); subsequently, the intoxilyzer test result should not have been admitted into evidence.

Under the doctrine of collateral estoppel, a party will be estopped from relitigating an issue where (1) the issue has been necessarily determined previously, and (2) the parties to that prior action are identical to, or in privity with, the parties in the instant action. *State v. O'Rourke*, 114 N.C. App. 435, 439, 442 S.E.2d 137, 139 (1994) (*citing County of Rutherford ex rel. Hedrick v. Whitener*, 100 N.C. App. 70, 75, 394 S.E.2d 263, 265 (1990)). The issue, willful refusal of the intoxilyzer test, was resolved in case I; therefore, our determination rests on the question of privity.

Whether or not a person was a party to a prior suit "must be determined as a matter of substance and not of mere form." *King v. Grindstaff*, 284 N.C. 348, 357, 200 S.E.2d 799, 806 (1973) (*quoting Chicago, R.I. & P. Ry. v. Schendel*, 270 U.S. 611, 618, 70 L. Ed. 757, 763 (1926)). "The courts will look beyond the nominal party whose name appears on the record as plaintiff and consider the legal questions raised as they may affect the real party or parties in interest." *Id.* at 357, 200 S.E.2d at 806 (*quoting Davenport v. Patrick*, 227 N.C. 686, 44 S.E.2d 203 (1947)).

In *O'Rourke*, a similar case, the defendant argued that the DMV had concluded that he did not willfully refuse to submit to a chemical analysis; therefore, the doctrine of collateral estoppel should have barred the State from introducing evidence of his refusal at his DWI trial. This Court did not address the first prong of the collateral estoppel test, noting that defendant's testimony was the only evidence that DMV found that he did not willfully refuse to submit to the intoxilyzer. The Court emphasized that privity is not established merely because the parties are interested in the same question or in proving the same facts; and, a party should be estopped from contesting an issue only where that party was fully protected in the earlier proceeding. *O'Rourke*, 114 N.C. App. at 439-40, 442 S.E.2d at 139. Assuming that the first requirement of collateral estoppel had been met, the Court concluded that the privity requirement was not satisfied because (1) the district attorney in the criminal proceeding and DMV in a civil licensing hearing protect different interests, and (2) the district attorney was not represented or "fully protected" in the administrative proceeding held before a DMV hearing officer. *Id.* at 440, 442 S.E.2d at 139.

Following the *O'Rourke* decision, the North Carolina Supreme Court clarified that it is the people of the State of North Carolina, rather than district attorneys, who are the real parties in interest in criminal prosecutions. *Brower v. Killens*, 122 N.C. App. 685, 688, 472 S.E.2d 33, 35 (1996), *disc. review improv. allowed*, 345 N.C. 625, 481 S.E.2d 86 (1997) (*citing Simeon v. Hardin*, 339 N.C. 358, 368, 451 S.E.2d 858, 865 (1994)). In *Brower*, we determined that DMV is also a servant of the people, relying on the Constitution of the State of North Carolina: "All political power is vested in and derived from the people; all government . . . is instituted solely for the good of the whole." *Brower*, 122 N.C. App. at 688, 472 S.E.2d at 35 (*quoting* N.C. Const. art. I, § 2). This Court therefore concluded that the district attorney and DMV "actually represent the same interest in driving while impaired cases—that of the citizens of North Carolina in prohibiting individuals who drive under the influence of intoxicating substances from using their roads." *Brower*, 122 N.C. App. at 688, 472 S.E.2d at 35 (*citing Joyner v. Garrett*, 279 N.C. 226, 239, 182 S.E.2d 553, 562 (1971) (license revocation statute is designed to promote breathalyzer examinations which supply evidence directly related to the State's enforcement of motor vehicle laws)). Likewise, we find that the Attorney General, representing DMV in a license revocation appeal, and the district attorney, representing the State in a criminal DWI proceeding, represent the same interest in DWI cases as enunciated in *Brower*. Under the privity requirement established in *O'Rourke*, our next determination concerns whether the district attorney was represented and "fully protected" in the civil license revocation appeal hearing in superior court.

Our Constitution provides:

> The District Attorney shall advise the officers of justice in his district, be responsible for the prosecution on behalf of the State of all criminal actions in the Superior Courts of his district, perform such duties related to appeals therefrom as the Attorney General may require, and perform such other duties as the General Assembly may prescribe.

N.C. Const. art. IV, § 18(1) (1984). The General Assembly is also authorized under Article III, § 18 of the North Carolina Constitution to create the Department of Justice, supervised by the Attorney General, and to enact laws defining the authority of the Attorney General. *Sotelo v. Drew*, 123 N.C. App. 464, 466, 473 S.E.2d 379, 380 (1996), *aff'd*, 345 N.C. 750, 483 S.E.2d 439 (1997) (citation omitted).

The General Assembly has provided that the Attorney General has the duty:

(1) To defend all actions in the appellate division in which the State shall be interested, or a party, and to appear for the State in any other court or tribunal in any cause or matter, civil or criminal, in which the State may be a party or interested.

(2) To represent all State departments, agencies, institutions, commissions, bureaus or other organized activities of the State which receive support in whole or in part from the State.

N. C. Gen Stat. § 114-2(1), (2) (1999). While the district attorney represents the State in the prosecution of criminal cases at the local level, the Attorney General represents the State in any appeal of a criminal case. The Attorney General has the same duties and responsibilities in representing the people of the State of North Carolina either in civil DMV license revocations or criminal DWI cases. Therefore, the district attorney is fully protected whenever the Attorney General represents DMV in a civil action when DMV and the district attorney have the same interest in the litigation. The State, however, relying on *Joyner v. Garrett*, 279 N.C. 226, 182 S.E.2d 553 (1971), argues that the doctrine of collateral estoppel does not apply between civil DMV license revocation proceedings and criminal DWI cases.

The defendant in *Joyner* appealed the revocation of his driver's license by DMV on the basis that he was so drunk he was incapable of willfully refusing to take the breathalyzer (chemical analysis) test. After the hearing in superior court, the trial judge found that the defendant willfully refused to submit to the test, affirming the DMV decision. The defendant argued that the twelve month suspension of his license in his DWI trial, which followed his guilty plea to the charge of drunken driving, constituted his "full penalty," exempting him from a license revocation by DMV. The Court found this argument untenable, stating that "[p]etitioner's guilty plea in no way exempted him from the mandatory effects of the sixty-day suspension of his license if he had wilfully refused to take a chemical test." *Joyner*, 279 N.C. at 238, 182 S.E.2d at 561 (citation omitted). The Court found:

Under implied consent statutes such as G.S. 20-16.2, the general rule is that neither an acquittal of a criminal charge of oper-

ating a motor vehicle while under the influence of intoxicating liquor, nor a plea of guilty, nor a conviction has any bearing upon a proceeding before the licensing agency for the revocation of a driver's license for a refusal to submit to a chemical test. (Citation omitted.) "It is well established that the same motor vehicle operation may give rise to two separate and distinct proceedings. One is a civil and administrative licensing procedure instituted by the Director of Motor Vehicles to determine whether a person's privilege to drive is revoked. The other is a criminal action instituted in the appropriate court to determine whether a crime has been committed. Each action proceeds independently of the other, and the outcome of one is of no consequence to the other. (Citation omitted.)

*Id.* at 238, 182 S.E.2d at 562. More recently, our Supreme Court fully examined the double jeopardy issue, holding that a revocation and fine invoked by DMV do not constitute punishment for purposes of double jeopardy analysis; therefore, defendant's subsequent criminal conviction for DWI did not amount to a second punishment for the same offense. *State v. Oliver*, 343 N.C. 202, 470 S.E.2d 16 (1996). The holding in *Joyner* establishes the rule that a civil license revocation case and a criminal DWI case are independent of each other in terms of outcome; however, it does not prohibit the application of collateral estoppel between the two cases.

In *Brower v. Killens*, this Court held that DMV was collaterally estopped from relitigation of a probable cause determination once it had been litigated in a companion DWI case, stating

the quantum of proof necessary to establish probable cause to arrest in criminal driving while impaired cases and civil license revocation proceedings, notwithstanding the different burdens on the remaining elements, is virtually identical. Therefore, we can discern no rational reason to allow DMV to relitigate the probable cause determination from case I.

*Brower*, 122 N.C. App. at 690, 472 S.E.2d at 37. Likewise, in the present case, the issue of willful refusal is identical in the civil DMV license revocation case and criminal DWI case. As in *Brower*, we believe our Supreme Court's decision in *State v. Lewis*, 311 N.C. 727, 319 S.E.2d 145 (1984), is dispositive, where the Court stated:

The state prosecuted the prior criminal action for nonsupport, just as it instituted the present civil action for indemnifica-

tion of its payments of support to defendant's children and for a continuing order of support by defendant. The state was not a nominal party in the criminal action; it is likewise not a nominal party in this action. In both cases the state pursued its interest in having a parent financially support his children. Thus the state occupies identical positions in both the criminal action for nonsupport and the current civil action for indemnification and continued support.

*Id.* at 732, 319 S.E.2d at 149. Because the issue of paternity was litigated in the earlier criminal action instituted by the State, the Court found that the defendant was estopped from litigating the issue again in a civil action instituted by the State. *Id.* Collateral estoppel provides that "[o]nce a party has fought out a matter in litigation with the other party, he cannot later renew that duel." *Lewis*, 311 N.C. at 730, 319 S.E.2d at 148 (*quoting Commissioner v. Sunnen*, 333 U.S. 591, 598, 92 L. Ed. 898 (1948)). Applying the same standard in the case *sub judice*, we find that the district attorney was fully represented and protected by the appearance of the Attorney General in a license revocation appeal in superior court. Because both prongs of the collateral estoppel test outlined in *O'Rourke* are satisfied, we hold that the State is estopped from relitigation of the issue of willful refusal to submit to the intoxilyzer test in a criminal DWI case, when the same issue has been adjudicated in a civil DMV license revocation proceeding with the Attorney General representing DMV in superior court. Therefore, the trial court erred in denying defendant's motion *in limine* and overruling his objection to admitting defendant's single breath intoxilyzer analysis of 0.11. The issue of willful refusal should not have been relitigated in the criminal DWI case.

[2] Defendant also contends that, under collateral estoppel, evidence of a refusal should not have been admitted at trial when a prior court had determined that the defendant did not refuse to take the intoxilyzer test. Under N.C. Gen. Stat. § 20-139.1(f) (1993), evidence of defendant's refusal to submit to chemical analysis is admissible in his criminal DWI trial. "Refusal" is defined as "the declination of a request or demand, or the omission to comply with some requirement of law, as the result of a positive intention to disobey." *Joyner*, 279 N.C. at 233, 182 S.E.2d at 558 (*quoting* Black's Law Dictionary (4th Ed., 1951)).

A defendant's refusal to submit to the intoxilyzer test after being charged with DWI can give rise to civil proceedings to revoke defend-

ant's driver license, but only if the refusal is a "willful refusal." *See* N.C. Gen. Stat. § 20-16.2. A willful refusal to submit to a chemical test within the meaning of N.C. Gen. Stat. § 20-16.2(c) occurs when a motorist: (1) is aware that he has a choice to take or to refuse to take the test; (2) is aware of the time limit within which he must take the test; (3) voluntarily elects not to take the test; and (4) knowingly permits the prescribed thirty-minute time limit to expire before he elects to take the test. *Etheridge v. Peters*, 301 N.C. 76, 81, 269 S.E.2d 133, 136 (1980).

The State contends that collateral estoppel does not apply because "willful refusal" and "refusal" are different issues; therefore, the first prong of the collateral estoppel test is not satisfied. The State relies on *State v. Pyatt*, 125 N.C. App. 147, 479 S.E.2d 218 (1997), for its contention, where this Court stated:

> However, G.S. 20-139.1(f) does not require a willful refusal before evidence of a refusal is admissible and we will not read in this additional requirement. The controlling factor in all statutory construction is the intent of the legislature . . . elsewhere in G.S. 20-139.1, the General Assembly used the term "willful refusal." Obviously, if it had intended to require a "willful refusal" in G.S.20-139.1(f), it would have done so.

*Pyatt* at 150-51, 479 S.E.2d at 220 (1997) (citations omitted). This Court held that the jury could consider defendant's refusal to take the intoxilyzer test without finding that the refusal was willful; however, the present case is distinguishable from *Pyatt*. The defendant in *Pyatt* argued that a refusal must be a "willful refusal" before it could be admitted as evidence under N.C. Gen. Stat. § 20-139.1. The defendant in the case *sub judice* contends that in the "willful refusal" determination, Judge LaBarre found that the defendant never *actually* refused the intoxilyzer, therefore, evidence of a refusal could not be presented to the jury.

The order of Judge LaBarre regarding the defendant and the intoxilyzer test states, in part:

> 5. That the defendant attempted to blow in the instrument and the machine did not record the sample of breath properly;

> 6. That the defendant attempted to blow into the instrument again and the instrument registered an adequate sample;

7. That the petitioner attempted to blow upon request into the machine a third time;

8. That the instrument registered an inadequate sample;

9. That the petitioner requested that the arresting officer allow him an opportunity to submit to the test one more time;

10. That the officer refused to allow him this opportunity even though only a minute had elapsed[.]

Judge LaBarre concluded that "the defendant attempted to take the test and never voluntarily elected not to take the intoxilyzer test." The other elements of "willful refusal" are not mentioned by Judge LaBarre; thus, it is evident, he bases his determination on the failure of the element of voluntarily electing not to take the test. This conclusion clearly states that the defendant did not refuse the intoxilyzer under the definition of refusal identified in *Joyner*. *See Joyner*, 279 N.C. at 233, 182 S.E.2d at 558. There was no appeal from Judge LaBarre's ruling, therefore it became the law of the case. *Pack v. Randolph Oil Company*, 130 N.C. App. 335, 337, 502 S.E.2d 677, 678 (1998) (*citing Duffer v. Royal Dodge, Inc.*, 51 N.C. App. 129, 130, 275 S.E.2d 206, 207 (1981); *Sutton v. Quinerly*, 231 N.C. 669, 677, 58 S.E.2d 709, 714 (1950) (the law of the case doctrine is the "little brother" of *res judicata*); 18 James W. Moore et al., *Moore's Federal Practice* § 134.20[1] (3d ed. 1997) (law of the case doctrine is "similar" to collateral estoppel "in that it limits relitigation of an issue once it has been decided")). We find, therefore, that the issue of "refusal" was litigated in case I. Having formerly determined that privity exists between the Attorney General and the district attorney in case I and case II, respectively, we hold that the court was collaterally estopped from submitting evidence of a refusal under N.C. Gen Stat. § 20-139.1 when the prior court had determined as a matter of law that a refusal, in fact, did not exist.

Our holding is limited to collaterally estopping the relitigation of issues in a criminal DWI case when those exact issues have been litigated in a civil license revocation hearing with the Attorney General representing DMV in superior court. This holding in no way restricts the outcome of civil DMV license revocation and criminal DWI cases, as both may proceed independently of each other with different outcomes, remaining true to *Joyner v. Garrett*.

Defendant conceded at oral argument that issue II in his brief is without merit. We have reviewed defendant's remaining argu-

ments, and find them without merit. For the foregoing reasons, this case is reversed and remanded for a new trial in accordance with this opinion.

New trial.

Judges GREENE and JOHN concur.