MEDICAL MUTUAL INSURANCE COMPANY OF NORTH CAROLINA, Plaintiff v. GARY EUGENE MAULDIN, M.D., and SYLVA ANESTHESIOLOGY, P.A., Defendants

No. COA99-33

(Filed 2 May 2000)

**1. Collateral Estoppel and Res Judicata— collateral estoppel—no issue preclusion—parties not identical nor in privity—dissimilar issue**

The doctrine of collateral estoppel does not apply to preclude plaintiff from pursuing its contribution claim in this medical negligence action against defendants Dr. Mauldin and Sylva Anesthesiology, who entered into a settlement agreement with the Houston estate while an appeal was pending following a jury finding that Houston's death resulted from the negligence of both Dr. Erdman and Dr. Mauldin, because: (1) the parties to the 3 August 1994 proceeding for approval of the settlement, Dr.

Mauldin, Sylva Anesthesiology, and the Houston Estate, were neither identical to nor in privity with the parties to the current action; (2) a party is not in privity with another simply because both parties have an interest in the outcome of a proceeding; (3) the only parties whose interests were protected by the order approving the settlement were the Houston Estate and the present defendants, and the record reveals that neither the present plaintiff nor Dr. Erdman received notice of the hearing; and (4) the issue resolved by the order approving the settlement between the estate and the present defendants, whether the settlement was made in good faith and was in the best interest of the heirs of the estate, is dissimilar to the issue presented in the current action concerning the effect the order has on the contribution rights of the parties.

2. **Collateral Estoppel and Res Judicata— res judicata—no claim preclusion—initial liability action—contribution action separate**

The doctrine of res judicata does not apply to preclude plaintiff from pursuing its contribution claim in this medical negligence action against defendants Dr. Mauldin and Sylva Anesthesiology, who entered into a settlement agreement with the Houston estate while an appeal was pending following a jury finding that Houston's death resulted from the negligence of both Dr. Erdman and Dr. Mauldin, because: (1) the effect of a postjudgment settlement on the contribution rights of the parties was not before the trial court when the settlement was entered into, and was not relevant to the question of whether the settlement was in the best interests of the heirs to the Houston Estate; (2) no judgment was entered in the proceeding to approve the settlement which decided the merits of the issue presented in the present action; and (3) N.C.G.S. § 1B-1(b) makes clear that a contribution action is separate from the initial liability action, and the right to seek contribution arises only when one joint tortfeasor has paid more than its share of the judgment.

3. **Contribution— joint and several liability—settlement and release—after entry of judgment—non-settling tortfeasor entitled to contribution**

The trial court's grant of summary judgment in favor of defendants is reversed and the case is remanded since a settlement and release given after entry of a judgment establishing joint and several liability on the part of multiple tortfeasors does

not extinguish the non-settling tortfeasor's claim for contribution against the tortfeasors who settled after the judgment, because entry of judgment against two or more joint tortfeasors fixes a defendant's right to contribution for the amount paid in excess of his equitable share and extinguishes any right to settle and thereby discharge liability for contribution. N.C.G.S. §§ 1B-3(f) and 1B-4.

Appeal by plaintiff from order entered 30 September 1998 by Judge James U. Downs in Macon County Superior Court. Heard in the Court of Appeals 20 September 1999.

*Roberts & Stevens, P.A., by James W. Williams, for plaintiff-appellant.*

*Wade E. Byrd and Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Stephen B. Williamson and Michelle Rippon, for defendant-appellees.*

MARTIN, Judge.

Plaintiff, Medical Mutual Insurance Company of North Carolina (Medical Mutual), appeals from the trial court's order granting summary judgment in favor of defendants Gary Eugene Mauldin, M.D., and Sylva Anesthesiology, P.A. The present action arises out of a suit instituted by Mary E. Houston, Administratrix of the Estate of Donald Gordon Houston, alleging Mr. Houston's wrongful death as a result of negligence on the part of John P. Erdman, M.D.; Dr. Mauldin; and Sylva Anesthesiology, P.A., Dr. Mauldin's employer. On 30 June 1994, following a jury finding that Houston's death resulted from negligence on the part of both Erdman and Mauldin, judgment was entered in Macon County Superior Court against Dr. Erdman, Dr. Mauldin, and Sylva Anesthesiology, P.A., in the amount of $725,000.00 plus interest. Defendants appealed.

In August 1994, while the appeal was pending, St. Paul Insurance Company (St. Paul), the professional liability insurance carrier for Dr. Mauldin and Sylva Anesthesiology, P.A., entered into a settlement agreement with the Houston Estate. Pursuant to the terms of the settlement agreement, St. Paul agreed to pay the sum of $225,000.00 in settlement of the Houston Estate's claims against Dr. Mauldin and Sylva Anesthesiology, P.A., and the Estate entered into a covenant not to enforce the Macon County judgment against Dr. Mauldin and Sylva Anesthesiology, P.A., and agreed that "payment

constitutes a full release and discharge of all monies owing or which might be owing . . ." by reason of the judgment. The settlement agreement was approved by the trial court on 3 August 1994, apparently outside the district and without notice to Dr. Erdman or Medical Mutual. In the order approving the settlement, the trial court found the settlement had been entered in good faith and that it was consistent with the provisions of G.S. § 1B-4. Dr. Mauldin and Sylva Anesthesiology withdrew their appeal on 11 August 1994.

On 15 October 1996, this Court rendered its decision finding no error in the trial, and remanded the matter on the issue of costs. *Houston v. Douglas*, 124 N.C. App. 230, 477 S.E.2d 97 (unpublished 95-307, 1996). Dr. Erdman's petition for discretionary review to the North Carolina Supreme Court was denied on 12 February 1997. *Houston v. Douglas*, 345 N.C. 342, 483 S.E.2d 167 (1997).

On 30 April 1997, plaintiff Medical Mutual Insurance Company paid on behalf of its insured, Dr. Erdman, the sum of the $692, 168.80 in full payment of the principal amount of the judgment and accrued interest less the amount previously paid by St. Paul. Having become subrogated to Dr. Erdman's rights to contribution, if any, plaintiff Medical Mutual brought this action for contribution against Dr. Mauldin and Sylva Anesthesiology, P.A. Defendants answered, denying that any right to contribution exists.

Plaintiff and defendants moved for summary judgment. The trial court denied plaintiff's motion for summary judgment and granted summary judgment in favor of defendants. Plaintiff appeals.

---

Citing N.C.R. App. P. 3 and 26, defendants have moved to dismiss the appeal by reason of plaintiff's failure to include in the record on appeal a copy of the certificate of service of the notice of appeal. We treat the appeal as a petition for certiorari, allow it, and address the issues on their merits.

I.

[1] Initially, defendants assert the principles of *res judicata* and collateral estoppel preclude plaintiff from pursuing its contribution claim in this action because plaintiff did not appeal from the 3 August 1994 order approving the settlement and/or assign it as error in its appeal from the judgment holding Drs. Mauldin and Erdman jointly liable for the wrongful death of Mr. Houston. The doctrine of collateral estoppel, or issue preclusion, prevents a party from relitigating

an issue where it has been previously determined and the parties to the prior action are identical to, or in privity with, the parties in the current action. *State v. Summers*, 132 N.C. App. 636, 513 S.E.2d 575 (1999). *Res judicata*, or claim preclusion, bars a party, or those in privity with that party, from relitigating the same action where a final judgment has already been entered on its merits. *Id.* We conclude neither doctrine precludes plaintiff's claim.

Collateral estoppel cannot apply for two reasons. First, the parties to the 3 August 1994 proceeding for approval of the settlement were neither identical to nor in privity with the parties to the current action; the parties to the proceeding for approval of the settlement were Dr. Mauldin, Sylva Anesthesiology, and the Houston Estate. Neither Dr. Erdman nor plaintiff, as his insurer, were involved in the settlement or the proceeding to approve it. A party is not in privity with another simply because both parties have an interest in the outcome of a proceeding; "a party should be estopped from contesting an issue only where that party was fully protected in the earlier proceeding." *Summers* at 639, 513 S.E.2d at 578. The only parties whose interests were protected by the order approving the settlement were the Houston Estate and the present defendants; from the record it appears that neither the present plaintiff nor Dr. Erdman received notice of the hearing.

Moreover, the issue resolved by the order approving the settlement between the Estate and the present defendants is dissimilar to the issue presented in the current action. The issue resolved by the 3 August 1994 order was the narrow one of whether the settlement between the Houston Estate and the present defendants was made in good faith and was in the best interests of the heirs of the Estate. Medical Mutual, the present plaintiff, does not challenge the validity of the order approving the settlement by this action; the issue presented in the present case concerns the effect of the order on the contribution rights of the parties.

[2] Likewise, the doctrine of *res judicata* cannot bar plaintiff's claim in this action. The effect of a post-judgment settlement on the contribution rights of the parties was not before the court when the settlement was entered into, and was not relevant to the question of whether the settlement was in the best interests of the heirs to the Houston Estate. No judgment was entered in the proceeding to approve the settlement which decided the merits of the issue presented in the present action.

**MEDICAL MUT. INS. CO. v. MAULDIN**

[137 N.C. App. 690 (2000)]

Defendants argue that plaintiff could have challenged the 3 August 1994 order in its appeal from the judgment, imposing joint and several liability for Houston's death, entered in the negligence action. However, the Uniform Contribution Among Tortfeasors Act, G.S. § 1B, Article 1, ("the Act"), which governs the law of contribution in North Carolina, makes clear that a contribution action is separate from the initial liability action, and the right to seek contribution arises only when one joint tortfeasor has paid more than its share of the judgment. N.C. Gen. Stat. § 1B-1(b). Therefore, the issue of the effect of the 3 August 1994 order approving the settlement on the respective rights of the joint tortfeasors to contribution was not ripe for determination until plaintiff, as insurer for one of the joint tortfeasors, paid more than its share of the judgment.

## II.

Finding no procedural bar to plaintiff's claim, we proceed to the primary issue presented by this appeal; i.e., the effect of a post-judgment settlement between a claimant and one of multiple tortfeasors on the contribution rights of a non-settling tortfeasor upon his payment of more than his pro rata share of the judgment. This question is one of first impression in North Carolina, arising upon an apparent conflict between two provisions of the North Carolina Uniform Contribution Among Tortfeasors Act. The Act essentially provides that where two or more persons become jointly and severally liable for the same injury, the injured party may recover his or her entire damages against any one of the joint tortfeasors, but any of the joint tortfeasors who pays more than his or her pro rata share of the damages has a right to contribution from the others for any amount paid in excess of the pro rata share. N.C. Gen. Stat. § 1B-1(b). The pro rata share is usually computed by dividing the total damage award by the number of jointly and severally liable tortfeasors, without considering a tortfeasor's relative degree of fault. See N.C. Gen. Stat. § 1B-2; David A. Logan and Wayne A. Logan, *North Carolina Torts*, § 8.20[7]; Charles E. Daye and Mark W. Morris, *North Carolina Law of Torts*, § 22.62 (1999). "The judgment of the court in determining the liability of the several defendants to the claimant for the same injury or wrongful death shall be binding as among such defendants in determining their right to contribution." N.C. Gen. Stat. § 1B-3(f).

However, a tortfeasor may avoid liability for contribution to other tortfeasors by obtaining a release, covenant not to sue, or covenant not to enforce judgment from the injured party. G.S. § 1B-4 provides:

When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(1) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is greater; and,

(2) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

No question arises when such settlements are reached between a plaintiff and one of multiple joint tortfeasors before a judgment has been entered. In such case, the final damage award is reduced by the amount of the settlement and the nonsettling tortfeasors owe the plaintiff the remainder of the award. See N.C. Gen. Stat. § 1B-4(1). In the present case, however, the Covenant not to Enforce Judgment was entered into after a judgment was entered establishing the joint and several liability of Dr. Erdman, Dr. Mauldin, and Sylva Anesthesiology, creating a conflict between the provisions in § 1B-3(f) and § 1B-4.

To determine which of these sections applies to this situation, we must examine the policies and goals underlying the Act as adopted by our General Assembly; the primary purpose of statutory interpretation is to give effect to the intent of the legislature. *Brown v. Flowe,* 349 N.C. 520, 507 S.E.2d 894 (1998). Where a statutory provision is clear and unambiguous, it must be interpreted in accordance with its plain and ordinary meaning. *Menard v. Johnson,* 105 N.C. App. 70, 411 S.E.2d 825 (1992). As defendants point out, in *Menard* this Court held the language of § 1B-4 "clearly" did not address cross-claims and counterclaims between joint tortfeasors, and they cite the holding as evidence that the language of the section is clear and unambiguous, and, therefore, not subject to judicial construction. However, in *Menard* we were interpreting § 1B-4, standing alone, in the context of whether it operated to bar one defendant, who has settled with the plaintiff, from maintaining a cross-claim against a co-defendant for his own damages allegedly inflicted by the co-defendant. In the present case, we must interpret § 1B-4 as it relates to another provision of the act, § 1B-3(f). Determining which of two *conflicting* provisions of an act should apply to a set of facts is a much different question

than determining the scope of one provision standing alone. *Brown*, 349 N.C. 520, 507 S.E.2d 894.

Where the application of two separate provisions, each clear and unambiguous standing alone, provides incompatible results, the provisions must be interpreted and reconciled so as to give effect to the overall purposes of the legislative act. " '[W]here a statute is ambiguous, judicial construction must be used to ascertain the legislative will.' " *Brown v. Flowe* at 523, 507 S.E.2d at 896 (quoting *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136-37 (1990)). Where more than one statute speaks to a single subject, the Court must read them together to determine legislative intent. *Id.* "Our task is to give effect, if possible, to all sections of each statute and to harmonize them into one law on the subject." *Id.* at 524, 507 S.E.2d at 896. We must therefore examine these provisions in *pari materia*, within the context of the entire Act.

Contribution arises when more than one tortfeasor is liable for a single injury; it permits one tortfeasor to demand assistance from the other tortfeasors if his payment to the injured party exceeds his pro rata share of the damage. David A. Logan & Wayne A. Logan, *North Carolina Torts*, § 8.20[7]. At common law, one who was jointly and severally liable for an injury had no right to compel contribution from others who were also liable for the same. injury. *Nationwide Mut. Ins. Co. v. Bynum*, 267 N.C. 289, 148 S.E.2d 114 (1966). A plaintiff could enforce the entire damage award against only one of several joint tortfeasors, allowing the plaintiff to allocate liability as he or she saw fit. A tortfeasor who paid a disproportionate share of the common liability had no recourse against the others. The common law was changed by the enactment of legislation eventually codified as G.S. § 1-240, which permitted a joint tortfeasor who paid a plaintiff more than his pro rata share of the damages to enforce contribution against others jointly and severally liable for the injury. *Nationwide, supra*; see Charles E. Daye and Mark W. Morris, *North Carolina Law of Torts*, § 22.61 (1999). In 1968, North Carolina replaced G.S. § 1-240 with the Uniform Contribution Among Tortfeasors Act, G.S. § 1B-1, *et seq.* The purpose of the Act was to "distribute the burden of responsibility equitably among those who are jointly liable and thus avoid the injustice often resulting under the common law." 12 Uniform Laws Annot., at 187, prefatory note (Master Edition, 1968). The law of contribution was designed to prevent an injured party from obtaining multiple awards for the same injury, and to prevent a tortfeasor who is only partially responsible, though jointly and severally liable, from

paying all of the injured party's damages. David A. Logan & Wayne A. Logan, *North Carolina Torts*, § 8.20[7]. The right to contribution presented a mechanism which allowed the plaintiff to be made whole without pursuing actions against multiple tortfeasors for the enforcement of one damage award, and also prevented an inequitable distribution of liability among the joint tortfeasors.

The Act also incorporated measures to encourage settlement. The drafters of the Act recognized that the contribution scheme described in the Act did not encourage settlement because "[no] defendant wants to settle when he remains open to contribution in an uncertain amount, to be determined on the basis of a judgment against another in a suit to which he will not be a party." 12 Uniform Laws Annot., s. 4 at 264 (Master Edition 1968). Therefore, the drafters included a provision governing covenants and releases; a plaintiff and tortfeasor could enter into a release, a covenant not to sue, or a covenant not to enforce judgment and be released from liability to other tortfeasors for contribution. See N.C. Gen. Stat. § 1B-4.

[3] Though North Carolina courts have not heretofore addressed the interplay between G.S. § 1B-3(f) and § 1B-4, our General Assembly has instructed that the Act "be so interpreted and construed as to effectuate its general purpose *to make uniform the law of those states that enact it*." N.C. Gen. Stat. § 1B-5. The Supreme Court of Massachusetts has addressed the identical issue in *Bishop v. Klein*, 380 Mass. 285, 402 N.E.2d 1365 (1980). Like North Carolina, Massachusetts modeled its law with respect to contribution, Mass. G.L. c. 231B, after the Uniform Contribution Among Tortfeasors Act. In *Bishop*, the Massachusetts Supreme Court reversed a trial court ruling which held that a settlement and release given after entry of a judgment establishing joint and several liability on the part of multiple tortfeasors extinguished the non-settling tortfeasor's claim for contribution against the tortfeasor who settled after the judgment. The Massachusetts Court, quoting the language contained in §§ 3(f) and 4, interpreted the statutes as "clearly establish[ing] that entry of judgment against two or more joint tortfeasors fixes a defendant's right to contribution for the amount paid in excess of his equitable share and extinguishes any right to settle and thereby discharge liability for contribution." *Bishop* at 293, 402 N.E.2d at 1371. The Court noted

G.L. c. 231B, § 4(b) was drafted to encourage settlements in multiple party tort actions by clearly delineating the effect

settlement will have on collateral rights and liabilities in future litigation.

> However, to apply the contribution bar of § 4(b) to a settlement reached after judgment has been entered contradicts the general purpose of the statute. . . . Where, as here, a wrongdoer has settled for less than his pro rata share, such a construction would, in essence, constitute a reversion to the common law view that an injured party may apportion the loss among joint tortfeasors as he sees fit. . . . We can resolve this apparent conflict of policies by limiting the preclusive effects of § 4(b) to prejudgment settlements.

*Id.* at 294-95, 402 N.E.2d 1371-72. In a footnote, the Court noted that the inclusion of "covenant not to sue" in the list of agreements precluding contribution contained in § 4(b) did not require the section to be applied to post-judgment settlements in that a "covenant not to enforce judgment" has been defined as a covenant "entered into after suit is commenced and before judgment." *Id.* (citation omitted).

The opposite result was reached by the Appellate Court of Illinois in *Fernandez v. Tempel Steel Corp.*, 277 Ill. App. 3d 330, 660 N.E.2d 218 (1995) and the Missouri Court of Appeals in *Callahan v. Cardinal Glennon Children's Hospital*, 901 S.W.2d 270 (1995). In both cases, those courts held that language similar to that contained in G.S. § 1B-4 applied equally to pre-judgment and post-judgment settlements. However, the contribution statutes in Illinois and Missouri did not contain any provision similar to our G.S. § 1B-3(f) that "[t]he judgment of the court in determining the liability of the several defendants to the claimant . . . shall be binding as among such defendants in determining their right to contribution." Therefore, we are not persuaded to follow the reasoning of those courts.

Defendants argue, however, that had our General Assembly intended contribution rights to be affected differently by a post-judgment settlement than by a pre-judgment settlement, it would have expressly so provided in § 1B-4. They cite, as an example, California's statutes relating to contribution among joint tortfeasors which expressly provide that the contribution liability of a settling joint tortfeasor is extinguished only when the settlement is entered into before verdict or judgment. See West's Ann. Cal. C.C.P. § 877. However, California's statutory scheme for contribution among joint tortfeasors is significantly different from the North Carolina Contribution Among Tortfeasors Act; a comparison of isolated provi-

sions of each act is neither helpful not relevant. *Compare* Cal. C.C.P. Title 11, Chapter 1 and N.C. Gen. Stat. § 1B.

We hold G.S. § 1B-3(f) controls the liability of joint tortfeasors after a judgment establishing their joint and several liability has been entered; consequently, G.S. § 1B-4 does not permit one of multiple tortfeasors to avoid liability for contribution to other joint tortfeasors by a settlement, after judgment, for less than his pro rata share of the judgment. To hold otherwise would allow an allocation of liability among joint tortfeasors to be decided by the injured party and permit a disproportionate share of the injured party's recovery to be inequitably borne by less than all of the parties equally responsible under the law, the very dangers the Uniform Contribution Among Tortfeasors Act was designed to prevent.

Summary judgment in favor of defendants is reversed and this case is remanded to the trial court for further proceedings consistent herewith.

Reversed and remanded.

Chief Judge EAGLES and TIMMONS-GOODSON concur.