STATE OF NORTH CAROLINA v. ALLEN T. SUMMERS, JR.

No. 195PA99

(Filed 5 May 2000)

**Motor Vehicles— driving while impaired—refusal to submit to Intoxilyzer—civil and criminal cases—collateral estoppel**

The Court of Appeals did not err in defendant's criminal prosecution for DWI by applying the doctrine of collateral estoppel to prevent relitigation of whether defendant willfully refused to submit to an Intoxilyzer test because: (1) that exact issue had been conclusively decided on appeal to civil superior court from defendant's driver's license revocation from the Division of Motor Vehicles (DMV) with the Attorney General representing DMV in superior court; (2) there is privity between the district attorney, representing the State in defendant's criminal prosecution for DWI, and the Attorney General, representing the State in defendant's appeal to civil superior court from his license revocation, since they both represent the interest of protecting the citizens of North Carolina from drunk drivers in judicial actions involving the determination of whether there was a willful refusal to submit to an Intoxilyzer test; and (3) N.C.G.S. § 20-16.2 and § 20-139.1, the primary sections prescribing the procedures for conducting chemical analysis and the civil and criminal consequences of the analysis, indicate a commonality of purpose and reflects direct cross-reference and reliance between the two.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 132 N.C. App. 636, 513 S.E.2d 575 (1999), reversing a judgment entered by Read, J., on 9 October 1997 in Superior Court, Durham County, and remanding for a new trial. Heard in the Supreme Court 16 February 2000.

*Michael F. Easley, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, for the State-appellant.*

*The Law Offices of James D. Williams, Jr., P.A., by James D. Williams, Jr., for defendant-appellee.*

LAKE, Justice.

Defendant was stopped on 23 March 1996 for passing another vehicle in a no-passing zone and was subsequently arrested for dri-

ving while impaired (DWI) in violation of N.C.G.S. § 20-138.1. He was taken to the magistrate's office, where the charging officer recorded that defendant willfully refused to submit to an Intoxilyzer breath-alcohol test. Defendant's refusal was reported to the Division of Motor Vehicles (DMV), which notified defendant that his driver's license was being revoked for one year, pursuant to N.C.G.S. § 16.2(d). Defendant appealed for a hearing before DMV, at which time the revocation was upheld. He then appealed to civil superior court, and on 17 April 1996, Superior Court Judge David Q. LaBarre overturned the revocation upon finding that defendant did not willfully refuse to submit to the Intoxilyzer test.

Defendant was found guilty of DWI in criminal district court on 7 October 1996 and appealed to superior court for a trial *de novo*. The trial court denied his motion *in limine* to exclude evidence relating to his alleged refusal to submit to the breath-alcohol test. Defendant was tried before a jury at the 7 October 1997 Criminal Session of Superior Court, Durham County. The jury found defendant guilty of DWI, and he appealed to the Court of Appeals.

The Court of Appeals issued a unanimous decision granting defendant a new trial. The court held the doctrine of collateral estoppel prevented relitigation of the question of whether defendant willfully refused to submit to an Intoxilyzer test because that issue had been conclusively decided on appeal to civil superior court from defendant's driver's license revocation by DMV. *State v. Summers*, 132 N.C. App. 636, 645, 513 S.E.2d 575, 581 (1999). On appeal to this Court, the State contends the Court of Appeals erred in applying the doctrine of collateral estoppel. We disagree.

The question of whether defendant did, in fact, willfully refuse to submit to an Intoxilyzer test is irrelevant to the determination of this appeal. The only issue before this Court is whether a civil superior court determination, on appeal from an administrative hearing, pursuant to N.C.G.S. § 20-16.2(e), regarding an allegation of willful refusal, estops the relitigation of that same issue in a defendant's criminal prosecution for DWI.

Under North Carolina law, "[a]ny person who drives a vehicle on a highway or public vehicular area thereby gives consent to a chemical analysis if charged with an implied-consent offense," which includes an offense involving impaired driving. N.C.G.S. § 20-16.2(a) (1999). If an individual charged with an implied-consent offense willfully refuses to submit to chemical analysis, after being informed of

STATE v. SUMMERS

[351 N.C. 620 (2000)]

the consequences of willful refusal, in accord with N.C.G.S. § 20-16.2, the charging officer must execute an affidavit to that effect, pursuant to N.C.G.S. § 20-16.2(c). Upon receipt of the affidavit, DMV must expeditiously notify the person charged that his or her license to drive is revoked for twelve months. N.C.G.S. § 20-16.2(d). The person charged may request a hearing by a DMV hearing officer, pursuant to N.C.G.S. § 20-16.2(d), and, if the revocation is sustained, he or she has the right to a hearing *de novo* in superior court. N.C.G.S. § 20-16.2(e).

In the case *sub judice*, DMV revoked defendant's license on the basis of an alleged willful refusal to submit to an Intoxilyzer test. Defendant's revocation was sustained through all stages of administrative review, and defendant filed a petition for a hearing *de novo* in superior court. At the civil court hearing, with the State Attorney General's office representing DMV, Judge LaBarre made findings of fact supporting the conclusion of law that defendant "did not willfully refuse to submit to a chemical analysis upon the request of the charging officer" and, on that basis, dismissed the revocation order. The State did not appeal the trial court's ruling, which accordingly became the law of the case. This Court must now determine whether the trial court's ruling became conclusive in defendant's criminal trial for DWI.

> The companion doctrines of *res judicata* and collateral estoppel have been developed by the courts of our legal system during their march down the corridors of time to serve the present-day dual purpose of protecting litigants from the burden of relitigating previously decided matters and of promoting judicial economy by preventing needless litigation.

*Thomas M. McInnis & Assocs. v. Hall*, 318 N.C. 421, 427, 349 S.E.2d 552, 556 (1986). The doctrine of collateral estoppel, also referred to as "issue preclusion" or "estoppel by judgment," precludes relitigation of a fact, question or right in issue

> "when there has been a final judgment or decree, necessarily determining [the] fact, question or right in issue, rendered by a court of record and of competent jurisdiction, and there is a later suit involving an issue as to the identical fact, question or right thereofore determined, and involving identical parties or parties in privity with a party or parties to the prior suit."

*King v. Grindstaff*, 284 N.C. 348, 355, 200 S.E.2d 799, 805 (1973) (quoting *Masters v. Dunstan*, 256 N.C. 520, 524, 124 S.E.2d 574, 576

(1962)). The doctrine of collateral estoppel " 'is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally.' " *Id.* at 356, 200 S.E.2d at 805 (quoting *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 599, 92 L. Ed. 898, 907 (1948)). " '[W]hen a fact has been agreed upon or decided in a court of record, neither of the parties shall be allowed to call it in question, and have it tried over again at any time thereafter, so long as the judgment or decree stands unreversed.' " *Id.* at 355, 200 S.E.2d at 804 (quoting *Dunstan,* 256 N.C. at 523-24, 124 S.E.2d at 576).

The requirements for the identity of issues to which collateral estoppel may be applied have been established by this Court as follows: (1) the issues must be the same as those involved in the prior action, (2) the issues must have been raised and actually litigated in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action must have been necessary and essential to the resulting judgment. *Id.* at 358, 200 S.E.2d at 806. Here, there is no dispute as to "the issue" element of collateral estoppel. The State does not contest that "the issue" is whether there was willful refusal, that it was raised and litigated and that it was material and necessary to the resulting judgment in defendant's appeal of his license revocation. Therefore, it is unnecessary to further analyze the collateral estoppel element of issue identity.

Unlike issue identity, the rules for determining whether the parties in question are or were in privity with parties in the prior action are not as well defined. Except in cases where the parties in each claim are identical, the meaning of "privity" for the purpose of collateral estoppel is "somewhat elusive . . . [and] '[t]here is no definition of the word "privity" which can be applied in all cases.' " *Hales v. N.C. Ins. Guar. Ass'n,* 337 N.C. 329, 333-34, 445 S.E.2d 590, 594 (1994) (quoting *Dunstan,* 256 N.C. at 524, 124 S.E.2d at 577). "In general, 'privity involves a person so identified in interest with another that he represents the same legal right' " previously represented at trial. *State ex rel. Tucker v. Frinzi,* 344 N.C. 411, 417, 474 S.E.2d 127, 130 (1996) (quoting 47 Am. Jur. 2d *Judgments* § 663 (1995)). "Whether or not a person was a party to a prior suit 'must be determined as a matter of substance and not of mere form.' " *Grindstaff,* 284 N.C. at 357, 200 S.E.2d at 806 (quoting *Chicago, Rock Island & Pac. Ry. v. Schendel,* 270 U.S. 611, 618, 70 L. Ed. 757, 763 (1926)). " 'The courts will look beyond the nominal party whose name appears on the record as

plaintiff and consider the legal questions raised as they may affect the real party or parties in interest.' " *Id.* (quoting *Davenport v. Patrick*, 227 N.C. 686, 688, 44 S.E.2d 203, 205 (1947)).

This Court previously determined the question of privity between an attorney general in a civil action and a district attorney in a criminal action in *State ex rel. Lewis v. Lewis*, 311 N.C. 727, 319 S.E.2d 145 (1984). In *Lewis*, there was privity and commonality of interest between the State in its criminal prosecution for nonsupport and the State in its civil action for indemnification of its payments of support to defendant's children. This Court concluded that the State was not a nominal party in either action, and that the defendant was collaterally estopped from litigating the underlying issue of paternity in a civil action after the issue had been fully litigated in the criminal action. *Id.* at 734, 319 S.E.2d at 150.

In the instant case, the State contends the district attorney, representing the State in defendant's criminal prosecution for DWI, was not in privity with the Attorney General, representing the State in defendant's appeal to civil superior court from his license revocation. However, there can be no question that the district attorney and the Attorney General both represent the interests of the people of North Carolina, regardless of whether it be the district attorney in a criminal trial court or the Attorney General in a civil or criminal appeal. See N.C.G.S. § 114-2(1), (2), (4) (1999); N.C.G.S. § 7A-61 (1999); *Simeon v. Hardin*, 339 N.C. 358, 368, 451 S.E.2d 858, 865 (1994).

The State also contends the Attorney General's interest in the revocation proceeding, "to remove from the highway one who is a potential danger to himself and other travelers," *State v. Carlisle*, 285 N.C. 229, 232, 204 S.E.2d 15, 16 (1974), is significantly different from a district attorney's interest in criminally prosecuting an individual for DWI, which is to seek justice and punish offenders. We find this argument unconvincing. The State's "interest" in this case is not the consequence of the outcome of the civil appeal or criminal action, i.e., license revocation or criminal punishment. It is the common interest in protecting the citizens of North Carolina from drunk drivers which supports a finding of privity between the Attorney General and a district attorney in judicial actions involving the determination of whether there was a willful refusal to submit to an Intoxilyzer test. Accordingly, as in *Lewis*, we conclude the State's interest was fully represented in the civil action and, therefore, the privity element of collateral estoppel was met.

Finally, the State argues that even if the requirements for collateral estoppel are met, the application of the judicially created doctrine in this case is inconsistent with the legislative intent to independently regulate DWI prosecution and driver's license revocation. The State contends the General Assembly could not have intended the outcome of one to offset the admissibility of evidence in the other. However, a review of the statutory language of sections 20-16.2 and 20-139.1, the primary sections prescribing the procedures for conducting chemical analysis and the civil and criminal consequences of the analysis, indicates a commonality of purpose and reflects direct cross-reference and reliance between the two. Section 20-16.2 requires that an individual obtaining blood samples for analysis meet the qualification outlined in section 20-139.1, and that a person requesting administration of a chemical analysis of his or her breath be given chemical analysis in accordance with the procedures of section 20-139.1(b). N.C.G.S. § 20-16.2(b), (i). Likewise, section 20-139.1 specifically states that a chemical analysis performed by an arresting officer or by a charging officer under the terms of section 20-16.2 is not valid unless it is performed in accordance with the provisions of section 20-139.1(b). N.C.G.S. § 20-139.1(b) (1999). Section 20-139.1(b3) also establishes the need for sequential breath tests in chemical analysis and provides that a person's willful refusal to give sequential breath samples constitutes a willful refusal under section 20-16.2. N.C.G.S. § 20-139.1(b3). These are only a few of the reciprocal references outlined in sections 20-16.2 and 20-139.1; however, they establish the State's common interest, from both a civil and criminal perspective, in the proper administration of chemical analysis and in the outcome of that analysis.

In appealing from the opinion of the Court of Appeals, the State urges this Court to reinstate the precedent established in *Joyner v. Garrett*, 279 N.C. 226, 182 S.E.2d 553 (1971). In *Joyner*, this Court stated:

"It is well established that the same motor vehicle operation may give rise to two separate and distinct proceedings. One is a civil and administrative licensing procedure instituted by the Director of Motor Vehicles to determine whether a person's privilege to drive is revoked. The other is a criminal action instituted in the appropriate court to determine whether a crime has been committed. Each action proceeds independently of the other, and the outcome of one is of no consequence to the other."

STATE v. SUMMERS

[351 N.C. 620 (2000)]

*Id.* at 238, 182 S.E.2d at 562 (quoting *Ziemba v. Johns*, 183 Neb. 644, 646, 163 N.W.2d 780, 781 (1968)). We stand by *Joyner* and do not perceive that our analysis of the issue at hand has any bearing on its rationale or holding. The instant case is not one, as it was in *Joyner*, where the outcome of a civil *administrative* proceeding, in which the Attorney General did not participate, is being submitted as determinative in a *judicial* proceeding. To the contrary, this case is focused on a prior civil *judicial* determination of one specific issue, in which the Attorney General did participate, and how that prior determination impacts a *judicial* criminal prosecution involving that very same issue. *Cf. Brower v. Killens*, 122 N.C. App. 685, 472 S.E.2d 33 (1996) (finding of no probable cause in judicial criminal proceeding given preclusive effect within subsequent judicial civil proceeding involving same issue), *disc. rev. improvidently allowed per curiam*, 345 N.C. 625, 481 S.E.2d 86 (1997). The holding of this Court in *Joyner*, that the civil administrative license revocation process and the criminal judicial proceedings in a DWI case are separate actions, does not relate to the issue involved here.

In the case *sub judice*, all of the elements of collateral estoppel were satisfied: the interests of the State were represented in the civil appeal by the Attorney General, the district attorney is in privity with the Attorney General, and the issue in interest between the Attorney General in the civil action and the district attorney in the criminal action was material and relevant to the disposition of the civil action and was fully litigated. Therefore, we affirm the Court of Appeals' holding that the State was collaterally estopped from relitigating the issue of willful refusal when the prior court had determined as a matter of law that a refusal, in fact, did not exist. *Summers*, 132 N.C. App. at 645, 513 S.E.2d at 581. We also affirm the Court of Appeals' determination that the holding in this case is "limited to collaterally estopping the relitigation of issues in a criminal DWI case when those exact issues have been litigated in a civil license revocation hearing with the Attorney General representing DMV in superior court." *Id.*

AFFIRMED.